M’Girk, C. J.,
delivered the opinion of the Court.
This was an action of debt brought in the name of the Governor of Missouri, to the use of Hill and ICeese, against Pierre Chouteau, as security of John R. Jones, administrator of Thomas Brady, deceased. The bond is dated 10th .of November, 1821, in the penalty of $6,000, conditioned that said Jones, administrator, &c., would make an inventory of all the goods of the intestate, and exhibit the same to the County Court of St. Louis county, on or before the 10th of February, 1822, and the same goods, &c., and all others, would well and truly administer according to- *525 law; that he would make a just and true account of his administration on or before the 10th of November, 1822; that he would distribute the residue according to the order of the Court; and that, upon production and proof of a will, he would render up his letters of, &c. The condition being in the words of the act of Assembly of 21st January, 1815, then in force.
The declaration sets out the bond with the condition, with an averment that Brady was, in his lifetime, indebted to Hill and ICeese in the sum of $3,500 for work and labor, &c. That they commenced suit in Brady’s lifetime, and recovered judgment against Jones, administrator, after Brady’s death. That Jones also died pending the action, when it was revived against the administrator and administratrix de bonis non of said Brady, and recovered judgment against them for $2,768 59, which is in full force and wholly unsatisfied.
The breaches assigned are, in substance: First. That goods, &c., came to the hands of Jones, as administrator, to the value of $10,000, and that he did not make and return an inventory thereof on or before the 10th of February, 1822. Second. That he did not administer, according to law, said goods, &e., but converted them to his own use. Third. That after the 10th of February, 1822, other property and effects came to his hands which he did not administer, but converted to his own use. Fourth. That after the date of the bond, there came to the hands of Jones $10,000 in cash, on account of sales of personal estate and debts due, which he did not administer, but converted to his own use. Fifth. That after date' of the bond there came to liis hands $10,000, received on sale of real estate, which he did not administer, hut converted to his own use. Sixth. That after date of the bond there came to his hands $10,000 other money, applicable to the payment of the debts of the intestate, which money he did not administer, but converted to his own use. Seventh. That he did not render a just and true account of his administration, on or before the 10th of November, 1822. The declaration then states an averment, that by means of the said several breaches, the damages recovered by Hill and Reese remain unsatisfied, whereby an action hath accrued to plaintiff &c., with the ordinary breach for non-payment of penalty.
The defendant pleaded, first, non est factum, concluding to the country. Second. Plene administravit by Jones, in his lifetime. Third. A special plea, answering all the breaches, alledging that Jones did make and return an inventory before the 10th of February, 1822. Second. That he did well and truly administer all the goods in the second breach alledged. Third, That after the 10th of February, 1822, no other goods, effects, &c., of intestate, came to the hands of Jones. Fourth, fifth and sixth. Denial of the receipt of money, as in fourth, fifth and sixth breaches alledged; and seventh, alledging that Jones did return a just and true account of his administration, &e., before the 10th of November, 1822.
Fourth. Nul tiel record of the recovery by Hill and Reese. The plaintiffs replied, averring the record of the recovery by Hill and Reese, traversing the second plea, and taking issue on the first and third.
The issues were all found for the plaintiff, damages assessed to $3,032 38, judgment for penalty and execution awarded for the damages, to the use of Hill and Reese; to reverse which this appeal is prosecuted. The bill of exceptions states all the testimony giverf to be, first, the record of the judgment in favor of Hill and Reese, as set out in the declaration. Second. A list of demands allowed by the Courts against Jones, as administrator, .amounting to several thousand dollars, of which not moro *526 than two, amounting together to $65 61, where exhibited within a year, and none <?f them, except $8 privileged. Third. The copy of an inventory, taken 22d of March, 1822, (but when returned does not appear,) amounting to $2515 25. Fourth. A list of sales, made 29th of March, 1822, amounting to $1972 62 1-2.
Fourth. A receipt of J. R. Jones, administrator, &c., to J. K. Walker, Sherifi) dated 23d October, 1823, for $420, the amount of surplus made by the sale of a lot of ground, as the properly of Thomas Brady, deceased, on execution in favor of S. Bond to P. Menard, against J. R. Jones, administrator of Thomas Brady, dedeased; all which documents were read without objection.
The defendant moved the Court to instruct the jury, first, that no evidence has been given of any actual damage sustained by plaintiff by reason of any breach alledged in plaintiff’s declaration. Second. That inasmuch as it does not appear that any evidence has been given of an execution issued against the estate of the intestate, they cannot find any damages for the plaintiff. Third. That inasmuch as no evidence has been given of any order or decree by the County Court, or the Probate Court, for the county of, St. Louis, directing said Jones to pay over any residue or balance in his hands to any person whatsoever, the jury shall find for the defendant. Fourth. That the defendant in this case is not to be held responsible for any sum or sums of money received by his principal, the administrator, upon any sale of land, effected under execution, or pursuant to the order of a Court of Justice, of competent jurisdiction, subsequent to the decease of the intestate; and that such sum or sums so received, are not includedjn or contemplated by the condition of the administrator’s bond, given in evidence in this case. All of which instructions were refused, and properly, as the appellee contends.
The refusal to give the instructions asked for by the counsel of Chouteau, is alledged to be error. We will take these several things into consideration in the order in which they stand. The first is, that the jury shall be instructed that no evidence has been given of any actual damage sustained by the plaintiff, by reason of any breach alledged; and secondly, because it does not appear that any evidence was given of an execution issued against the estate of the intestate. These two are to be considered as making one point, and that is, must a creditor, after he obtains judgment against the administrator, proceed to execution and return thereon, before he can maintain his action on the administrator’s bond against the security?
In the consideration of this question, we have not been referred to any adjudged case in England, nor do we know that any can be found directly in point; but one has been produced from 1 Munford’s Reports, page 1, Gordon v. the Justices of Frederick, where it is decided that the remedy which a creditor may have must be exhausted before he can sue on the administrator’s bond, on the ground of waste in the administrator. Let us first see what light can be derived from the common law on this subject. At common law, the executor or administrator might subject himself to a judgment de bonis propriis in the first instance, by pleading a false plea, the falsity of which lay within his own knowledge: 3 Bac. 87. Secondly, if he did plead, and then fully administered, he admitted assets; then the judgment was conditional, and the execution on the judgment would be de bonis testatofis, if there were goods of the testqtor in his hands, and if not, then of his own goods; to this, the Sheriff, if he cannot execute the writ according to its tenor, might return milla bona generally, or nulla bona and a devastavit, on the latter return. The plaintiff *527 might have execution immediately against executors; but where nulla bona only was returned, the ancient course was to issue a special writ for the Sheriff, to inquire if there was a waste, and if it was returned that there was a waste, a scire facias issued for the defendant, to show cause why the plaintiff should not baye execution de bonis ■propriis. If this inquiry was found against him, then he was answerable de bonis propriis ; hut afterwards, for the sake of expedition, the inquiry and sci. fa. are made out in one writ, reciting the judgment of fi. fa. and return nulla bona, and a suggestion of a devastavit, commanding the Sheriff to make the money of the goods of the testator, and if he could not, then to have an inquisition of waste, and notify the defendant to show cause why there should be judgment de bonis propriis. The next method of getting at the goods of the executor was, to bring an action of debt against him, suggesting devastavit. By the foregoing it appears several modes exist of getting at the goods of the executor or administrator, for mal-administration, but this affords no light as to what shall be considered a breach of the administration bond. The case cited from Man. Rep. p. 1, takes the ground that the security is not liable till devastavit is established against the administrator. Though we have great respect for the Judges who decided this case, we cannot consent that it is law. It is admitted by the case that no adjudged case from English hooks can be found, directly in point. The Court, in the absence of authority, proceed to adjudicate on what seems to them to he most just and reasonable. We hold the administration bond is broken, like any other, and the only difference is, that in the case of a devastavit being previously established by record evidence, the proof of mal-administration would be eas3r, and m the other case not so easy. The condition is, that he shall well and truly administer the effects, &e. It is an important part of his duty to pay debts, if he has assets. By the laws of this State, the administrator is bound to sell every thing immediately, on a credit, except slaves; and even slaves are to he sold, if necessary, to pay debts. Then if he does his duty, in many instances there will be no available assets to pay debts, till the time of credit has expired, in which cases a return of milla bona would be no satisfactory evidence of waste; it would prove very little indeed. The law is, that an action of debt against executors, suggesting waste, can only be maintained after a judgment de bonis testatoris, and that the plaintiff must prove his judgment against the defendant; and that on nil debit, the only points in dispute on the judgment, are the debt thereon and the devastavit. The .only evidence to support the plaintiff’s ease which is necessary is, an examined copy of the judgment, and of the writ of fi. fa. de bonis testatoris, with the Sheriff’s return of milla bona: Peake’s Evi. 352. Peake then proceeds to say, though this evidence is sufficient, it is not conclusive against the defendant; for notwithstanding the Sheriff’s return of devastavit, the defendant may still show that in point of fact he has not wasted the goods of the testator. The conclusion we draw from this is, that though this evidence is prima facie good, it concludes nothing; and yet the plaintiff in error wishes to compel the defendant to go through this ceremony, which concludes nothing. If the administrator has not duly administered, the bond is broken. If a debt is recovered against him, and he, having means, neglects to pay it when he ought, this is mal-administration; then what shall he the measure of damages, is another question. The creditor is to show his injury by evidence. We do not think the creditor is driven to compel the administrator to settle in the Probate Court; he may do this, hut he may have a remedy on the bond, if he chooses to take upon himself this more burthensome course,
*528 We will now consider the next question, which is, that before the plaintiff can recover, there must have been an order of the Probate Court, directing the administrator to pay. This point has already been disposed of in the negative.
The fourth point is, that the security is not liable for any money received by the administraron on the sale of real estate. The evidence is, that the administrator received money from the Sheriff, which money was an overplus made on the sale of part of the intestate’s estate on judgment and execution. The question is, whether this money is assets in the adminsstrator’s hands to be administered ? Tho language of the condition of the bond is, that the administrator shall well and truly administer the goods, chattels, rights and credits, and all other goods, &c., which have or shall come to his hands, which were of the deceased at the time of his death. The condition of the bond refers to rights and credits, which belonged to the deceased at the time of his death, which shall in future come to the hands of the administrator. We consider this money assets, arising to the administrator, which grew out of some right belonging to the deceased at the time of his death, and of this sort of assets there are many instances in the law. The first case is found in Peake’s Ev., 347, where it is said, if the executor has actually made money of any thing which came to his hand from the testator, though it was quite uncertain whether any value could be attached to it or not, he shall be chargeable to tbe creditor to the amount of the money so made. As where the executor sold the good will of the deceased’s trade, Lord Kenyon held the money to be assets. Toiler on Executors, in pp. 165-6, says, chattels, which were never vested it the testator in possession, may accrue to an executor by remainder or increase, as a remainder not vested in the life of the testator; ■ so the young of cattle, and produce after the death of the testator; so if an executor of a lessee for years enter on the lands demised, the profits over and above the rent shall be assets. If lands are devised for the payment of debts, they shall be assets for that purpose only. Toller, 416. And whether the executor or heir would be entitled to the surplus is, in this country, wholly immaterial, as no heir in this State can take any thing absolutely till the debts are paid; and when the debts are paid, the same persons are heirs who are distributees. It is also laid down as law, that if an executor redeem a pledge with the money of the deceased, the thing redeemed shall be assets, as if a mortgage, a lease, or pledge, a jewel, or piece of plate, and before the day limited for redemption, die, his executor is entitled to redeem at the day, and if he redeem with testator’s money, the chattel is assets, and if it be necessary to sell the chattel to redeem, the surplus shall be assets. Toller, 164. From this it appears, that this money is assets in the hands of the administrator, applicable to the payment of Brady’s debts. The remaining point is, that the jury gave a verdict for the amount of Hill and Keese’s judgment, and that it should have been apportioned among the other creditors, whose demands were allowed.
It appears that this debt was privileged above all others, except some small ones, by reason of its having been duly exhibited within the year; but the assets proved were sufficient to meet this recovery, and these other small demands also, and as t.o tlje others not exhibited within the year, they are not to be paid till these are paid'.
Upon the whole matter, we affirm the judgment of the Circuit Court.