BEECHER and another, administrators, with the will annexed, of the estate of *Dolly Chatfield,* deceased, *against* BUCK-INGHAM and another.

Where the defendants, in an action brought against them on a promissory note, by *A* and *B*, as administrators, claimed, that they had paid the sum due on the note to *B*, who received it, and paid it over to the legatees entitled thereto, in his character of administrator; and in support of such claim, the defendants offered *B* as a witness; it was held, 1. *that such payment having been made by the defendants voluntarily, and with a full knowledge of all the facts, they could not recover back from B the money so paid, in the event of their being compelled to pay the note again; 2. that B had, consequently, no interest, which would render him an incompetent witness for the defendants.*

Where it was *shown, as a further objection to the competency of B,* that at the time he received the money so paid to him by the defendants, he gave them a bond of indemnity; but it also appeared, that before he was offered as a witness, the defendants gave up such bond to him, for the purpose of qualifying him as a witness; it was held, that the interest of *B, resulting from the giving of the bond, was extinguished, and he was a competent witness.*

The legal title to all the personal property of the deceased, including *choses in action,* vests in administrators, as well as executors; and they can dispose of it at pleasure, being responsible for the faithful execution of the trust.

And a transfer of a *chose in action* belonging to the estate of the deceased, by *one of two or more administrators, is ordinarily effectual to vest the legal title in the vendee.*

But where *A*, one of two administrators, after he had become bankrupt, sold a note not negotiable to *C*, contrary to the prohibition of *B*, the other adminis-

trator, *C* having full knowledge of the bankruptcy of *A* ; in an action at law brought on such note, by *C*, in the names of *A* and *B*, it was held, 1. that no legal title to the note passed to *C*, because it was not negotiable ; 2. that *C* had no implied authority to use the name of *B* in such action, by reason of the circumstances under which the sale was made.

Where it was shown, by the defendants in such action, that they had paid the money due on the note to *B*, and he had paid it over to those who were ultimately entitled to it, and given the defendants a discharge ; it was held, 1. that such payment and discharge constituted an effectual defence to the action, unless *C*, the assignee, was protected, by the statute of 1822, relating to the assignment of *choses in action* not negotiable ; 2. that as *C* took the note under suspicious circumstances, and it did not appear that the purchase money had been applied for the benefit of the estate, *C's* equity was not superior to that of the defendants, and therefore, his claim was not aided by the statute.

THIS was an action on a promissory note ; tried, on the general issue, at *New-Haven, October* term, 1845, before *Waite,* J.

On the trial, the making of the note, by the defendants, and the appointment of the plaintiffs as administrators *cum testamento annexo,* were proved and admitted The defendants then read in evidence a release, executed by *Daniel Tolles,* one of the plaintiffs, as administrator aforesaid, under his hand and seal, dated *April* 6th, 1844, acknowledging the receipt of the full amount due on said note, and discharging the defendants from all demands on account thereof—accompanied with proof that they had actually paid to him (*Tolles*) the amount due on said note ; that he had settled his administration account with the court of probate ; and that, upon such settlement, he had paid over to that court all the money and property belonging to the estate of the deceased, for the use of those entitled thereto under the will, including in the money so paid, the amount received of the defendants.

On the part of the plaintiffs, it was claimed, that the suit was brought for the use and benefit of *Simeon Hinman,* who claimed title to the note in question, by virtue of a sale thereof made to him, by *Abraham T. Beecher,* one of the plaintiffs and one of said administrators, before any payment made by the defendants. In support of his claim, *Hinman* produced in evidence a bill of sale, dated *February* 5th, 1844, executed by *Beecher,* as administrator, conveying the note to him, for a valuable consideration, accompanied with evidence, that on that day, he gave the defendants due notice of such sale and

transfer to him. He further introduced evidence to prove, that on the 9th of *February* 1844, he paid *Beecher* between 200 and 300 dollars in money, and gave him security for the balance of the purchase money, and, at the same time, gave *Tolles* notice of the sale. He further claimed, that at the time of the sale, there were bills against the estate for counsel fees and expenses attending the settlement of the estate, and that the money paid by him was needed for the payment of those bills.

The defendants claimed, that the sale to *Hinman* was made by *Beecher*, for the purpose of defrauding the estate out of the amount of the note; that in the month of *January* 1844, *Beecher* failed, and made an assignment of all his property for the benefit of his creditors, and, at the time of the sale to *Hinman*, was an utter bankrupt, and shortly afterwards left the state; that although he had settled his account with the court of probate, he had never rendered any account of the moneys received by *Hinman*, nor had the estate derived any benefit therefrom; that *Hinman*, before the sale, had knowledge of the insolvency of *Beecher*, and had been expressly forbidden, by *Tolles*, to purchase the note of him. The defendants further claimed, that this note, with the other notes belonging to the estate, was in the possession of *Tolles*, who, by the advice of the judge of probate, deposited them with him; that *Beecher*, without the knowledge of *Tolles*, had got possession of the note, and transferred it to *Hinman;* and that the money received from *Hinman* was not needed for the payment of debts or expenses. They further claimed, that before this suit was commenced, *Hinman* had full knowledge of the payment made by them to *Tolles*, and was by *Tolles* expressly prohibited from bringing any suit upon said note in his name; and that this suit was commenced and prosecuted without the consent of *Tolles*, and contrary to his express directions.

In support of their claim, the defendants offered *Tolles* as a witness. To his admission the plaintiffs objected, on the ground that he was interested; for if a recovery should be had against the defendants, he would be obliged to indemnify them for the amount which they should be compelled to pay. The defendants claimed, that he was not interested; because they had paid to him, in his capacity of administrator, the amount of the note; and he, in the same capacity, had paid

over the money to those entitled to receive it under the will.

New-Haven,
July, 1846.

Beecher
v.
Buckingham.

On a preliminary examination of *Tolles* as to his interest, he testified, that the payment to him was made by the defendants, upon his giving them a bond of indemnity to save them harmless from all costs and expenses arising upon any suit brought for the recovery of the money due upon the note ; which bond of indemnity had been just given up to him for the purpose of enabling him to testify in the cause. The court overruled the objection, and admitted *Tolles* as a witness.

It was further claimed, on the part of the plaintiffs, that *Tolles*, when he was notified of the sale to *Hinman*, assented to such sale. This was denied by the defendants. They also claimed, that administrators had no power to sell a *chose in action*. It was their duty to collect the debts due to them as administrators—not to sell them. They further contended, that if administrators possessed such power, one of two administrators could not exercise it, without the assent of his co-administrator ; and that in this case, a purchase from *Beecher* alone gave *Hinman* no right or authority to commence or prosecute a suit in the name of *Tolles*. On the part of the plaintiffs, it was claimed, that administrators had the same power to sell *choses in action* as they had to sell any other personal property ; and that each of two administrators possessed this power, as well as both. They further claimed, that if the jury should find, that the note in suit had been sold to *Hinman*, and notice given to the defendants, in the manner claimed by the plaintiffs, *Hinman* had a right to commence and prosecute this suit, and was entitled to recover all that he had paid for the note.

The court instructed the jury, that if they should find, that *Hinman* purchased the note of *Beecher*, after he had become a bankrupt, with full knowledge of such bankruptcy, and contrary to the prohibition of *Tolles*, the other administrator, he was not entitled to recover in this suit, unless he could show, either that the estate had been benefitted by such sale, or that the other administrator had assented to it. If he purchased under such circumstances, it was his duty either to see to the application of the purchase money, or obtain the assent of the other administrator. But if they should find, that *Hinman* had done either of these things, he was entitled to recover, although he purchased of an insolvent administrator, with knowledge of

such insolvency; the plaintiffs, and each of them, having power to sell the note.

The jury returned a verdict for the defendants; and the plaintiffs thereupon moved for a new trial.

*C. A. Ingersoll*, in support of the motion, contended, 1. That *Tolles*, the witness introduced on the part of the defendants, was an incompetent witness, being interested in the event of the suit. If a recovery should be had against the defendants, he would be obliged to indemnify them for the amount which they would thus be compelled to pay. In the first place, *Tolles*, by receiving the amount of the note from the defendants, after it had been assigned by *Beecher* to *Hinman*, and after he (*Tolles*) had notice of such assignment, committed a wrong act, for which he would, irrespective of any bond of indemnity given by him, be liable to them in damages, if a recovery is had against them in this suit; and the amount so recovered would be the rule of damages in a suit in their favour against *Tolles*. It may be claimed, that there is a balance of interest on the part of *Tolles*; that as he has received the money of the defendants, it is immaterial to him where the money goes; that if a recovery is had by the plaintiffs, he will be obliged to pay it to the defendants; and that if a recovery is not had, he will be obliged to pay it to the legatees under the will. But it appears by the motion, that *Tolles* had paid over the money which he received from the defendants, to those who were entitled to receive it under the will. If therefore the defendants should recover of *Tolles* (upon a recovery against them by the plaintiffs,) the amount which they paid to *Tolles*, *Tolles* would not be indemnified, unless he recovered of those to whom he paid the money. This is not such a balance of interest as will make him a competent witness. *Owen* v. *Mann*, 2 *Day*, 399.

But even if *Tolles* had the money in his hands, and his interest was balanced, so far as the debt is concerned, he would have an interest to prevent a recovery for *costs*, in the suit now pending. Being thus interested to prevent a recovery for costs, which costs would go to swell the damages which the defendants would recover against him, he is an incompetent witness. *Beach* v. *Swift*, 2 *Conn. R.* 269. *Barnwell & al.* v. *Mitchell*, 3 *Conn. R.* 101. *Terrell* v.

*Smith*, 8 *Conn. R.* 427–430.     *Bill* v. *Porter & al.* 9 *Conn. R.* 23.

Secondly, at the time *Tolles* testified, the bond of indemnity which he had given, was a valid and legal instrument, upon which he was liable. The bond had been duly executed and delivered ; it had never been paid or satisfied ; there had been no accord and satisfaction ; it had never been discharged ; it had never been cancelled or surrendered to be cancelled. It was then a valid existing instrument. It was given up to *Tolles* only to enable him to testify in the cause ; not given up to him to be cancelled. The giving up of a bond, in any case, by the obligee to the obligor, will not destroy or invalidate such bond. This bond was delivered up to *Tolles* for a particular purpose ; and when that purpose was accomplished, he had no further right to it, but it became his duty to hand it back to the obligee, not as a new instrument, but as the old one still in force.

2. That by the death of *Dolly Chatfield*, the absolute legal title to all her personal property vested in *Tolles* and *Beecher*, the administrators with the will annexed. 1 *Sw. Dig.* 445, 6.

3. That it having thus vested, *Beecher*, one of the administrators, had a legal right, without the consent of *Tolles*, the other administrator, to sell or pledge any of the personal property of the deceased, including *choses in action ;* and such sale or pledge would be valid. *Williams on Exec.* 592. 620. *Wheeler & al.* ex'rs. v. *Wheeler*, 9 *Cowen*, 34. *Murray* v. *Blatchford & al.* 1 *Wend.* 583. *Jacomb* v. *Harwood*, 2 *Ves.* 267. *Gage* v. *Johnson*, 1 *McCord*, 492. A *bona fide* purchaser is not responsible for the faithful application of the money. *Field* v *Schieffelin*, 7 *Johns. Ch. R.* 150. *Nugent* v. *Gifford*, 1 *Atk.* 463. *Whale* v. *Booth*, 4 *Term R.* 625. n. *McLeod* v. *Drummond*, 14 *Ves.* 359. 17 *Ves.* 152.

4. That *Beecher* and *Tolles*, or either of them, cannot, after the assignment, by any act of theirs, impair or vary the rights which the assignee acquired, by virtue of the assignment. Whatever rights the assignee acquired, were acquired *by the assignment.* If that was *bona fide*, no subsequent fraudulent conduct of *Tolles* or *Beecher*, could affect it. *The Chestnut Hill Reservoir Company* v. *Chase*, 14 *Conn. R.* 124. *Kimball & al.* v. *Huntington*, 10 *Wend.* 675. The question put by the court to the jury, was not whether the purchase was

*New-Haven,*
*July, 1846.*

Beecher
*v.*
Buckingham.

fraudulent, or made with the view to defraud the estate ; but they were in substance told, that notwithstanding money was wanted by *Beecher*, to pay the debts, which would create a necessity for a sale ; notwithstanding *Hinman* paid his money to *Beecher bona fide*, supposing that he would apply it to the payment of the debts ; yet, if it was not applied, he could not recover. According to the charge, if, after the sale, *Tolles* and *Beecher* had combined to cheat *Hinman*, and to effect this, an arrangement was made by them, by which *Tolles* should credit the amount of the note in his administrator's account, and by the collusion of *Tolles*, *Beecher* should not credit it in his, *Hinman* could not recover. If a purchaser must see to the application of the purchase money, on the sale of a note, he must see to it, on the sale of any other personal property. *Hinman* took the note subject only to the equity which existed at the time he took it. There was no equity existing against him, at that time.

5. That it is no evidence of fraud, that the administrator who sold, was a bankrupt.

*Baldwin*, contra, remarked *in limine*, that the suit was brought and prosecuted, in the name of the plaintiffs, against the prohibition of *Tolles*, by *Hinman*, claiming to be assignee of the note ; that the defendants, on the trial, denied the validity of the assignment, and relied, in their defence, on proof of payment of the note, before due, to *Tolles*, who duly applied the proceeds to the benefit of the estate ; and that the jury have found, that *Hinman* purchased the note of *Beecher*, after he had become a bankrupt, and with full knowledge thereof, and contrary to the prohibition of *Tolles*, the co-administrator ; that the proceeds of the sale had never been accounted for, by *Beecher*, or in any way applied to the benefit of the estate; and that the other administrator had never assented to the sale. The counsel then contended, 1. That the administrators, even jointly, had no power to *sell* (at least without the order of the court of probate,) *choses in action*, not by law negotiable. These it is their duty to collect—not to sell. They are required by statute to make a *list* of them ; (*Stat.* 229. *tit.* 31. *s.* 12. ed. 1838.) and they become assets in their hands, when collected. *Williams on Exec.* 1022. 14 *Johns. R.* 452. 1 *Sw. Dig.* 446. They derive their whole power

from the *law ;* and the assignment of *choses in action* not ne- *New-Haven.*<br>July, 1846.
gotiable is against the policy of the law.

Beecher<br>*v.*<br>Buckingham.

2. That if the administrators jointly possessed the power
to transfer *choses in action* not negotiable, *Beecher* alone had
no such power, without the consent of *Tolles,* his co-adminis-
trator, much less against his express prohibition.    1 *Atk.* 461.
1 *Bla. Com.* 510.    *Wood's Inst.* 535.    2 *Ves. & Bea.* 51.    1
*Phillimore* 123.    2 *Phillimore* 23.    1 *Hagg.* 222.    *Williams
on Exec.* 622.    An *executor* derives his power from the *test-
ator,* an *administrator,* from the *law.*    It is an *office,* which, if
granted to two, requires their *joint action* in the performance
of its duties.    If in the absence of known dissent, the acts of
each may be regarded as performed by the authority of both,
such an inference ceases where dissent is proved.    Personal
property in possession of an administrator, transferable by de-
livery, may well be regarded as under the authorized controul
of him who has it in charge.    So too, a release of a debt by
one of two administrators, who must join in a suit for its recov-
ery, may well be available as a defence; while, nevertheless,
a transfer of a *chose in action,* which is not by law transfera-
ble, cannot pass to an assignee, without the action of both, an
equitable title.    If an assignee of a *chose in action,* from an
administrator, acquires any rights, they must be such only as
arise in *equity,* between him and the *estate* which has had the
benefit of the consideration he has paid.    On this principle, in
*Lepard* v. *Vernon,* 2 *Ves.* & *Bea.* 51. Vice-Chancellor *Grant*
says : " Where one of several executors assigns to a creditor
of the testator a debt due to the estate, such an assignment
will not be available against the dissent of the other executor.
If the executor had parted with any portion of the property
*legally transferable,* to the particular creditor, who, by such
an assignment, had obtained a legal advantage, it could not
perhaps be taken from him ; but of an assignment of a *chose
in action,* no use could be made, without the assistance of a
court of equity.    And equity would not interfere to give a par-
ticular creditor an advantage over the other executors, as
general creditors."    In *Hertell* v. *Bogert,* 9 *Paige,* 58. the
same principle is recognized.    Even where a *legal* title passes,
if it is obtained under circumstances proving *collusion* be-
tween an executor and the purchaser, and is prejudicial to
the estate, a court of chancery will set it aside.    In *Scott* v.

*Tyler,* 2 *Dickens,* 724, 5. Lord *Thurlow* says, that if one concert with an executor to obtain the effects, at a nominal price, or at a fraudulent under-value, or in extinguishing the private debt of the executor, *or in any other manner* contrary to his duty as executor, chancery will avoid it. If the administrator, designing to defraud the estate, dispose of the transferable property, to one who receives it under such extraordinary circumstances as should put any prudent man on his guard, and the estate is *defrauded,* by means of such transfer by a bankrupt administrator, it is highly equitable that the purchaser should be held responsible to the estate. *A fortiori,* such a person would not be entitled to aid in his endeavours to deprive the estate of the legal title.

3. That *Hinman* derives no authority to prosecute this suit in *Tolles'* name, against his express dissent, from the statute of 1822. By virtue of that statute, a *bona fide* assignment of a *chose in action,* is protected against the release or fraudulent acts of the assignor, to the same extent as it would be in *a court of equity,* and no further. *Stat.* 66. ed. 1838. It follows, therefore, that in order to avoid the effect of the release by *Tolles,* the co-administrator, *Hinman,* the assignee, must show, that his *equitable* rights as assignee, are superior to those of the estate of the deceased, in regard to this *chose in action.* The *legal* title to the note of the defendants, remained as completely vested in the administrators, after as before the assignment. Are the *equitable* rights of the estate represented by the administrators, any less? The equitable rights of an individual assignor cease, on his making an assignment, for a valuable consideration. And so, in like manner, the equitable rights of the estate would be taken away, on the administrator's receiving a consideration. The statute is intended to operate on those cases in which it would be fraudulent or inequitable for the holder of the legal title to assert it, after an assignment for value. But if the assignment has been made under such circumstances, that the estate, and those beneficially interested, are *defrauded,* by the intervention of the assignee, and against the prohibition of a co-administrator, there is no equity, which makes it against conscience for the estate to retain the benefit of the legal title ; and no principle of public policy, which requires such a purchaser to be protected, at the expense of the estate which has been defrauded.

The same law which clothes the co-administrator with all the powers he possesses, (for he derived none from the testator,) forbids the assignment of a *chose in action* not negotiable. Its policy is, that all such debts shall be *collected*—not assigned.

4. That the plaintiffs are precluded from a recovery in this case, on the general principle, that whoever treats with an administrator for a purchase, even in the ordinary course of administration, by which nothing is legally transferred, must see to the application of his purchase money to the purposes of the estate, or he is remediless. See *Williams* on *Exec.* 622.

5. That *Tolles* was a competent witness for the defendants.

WAITE, J. 1. *Daniel Tolles*, one of the plaintiffs, was called as a witness, by the defendants. To his admission an objection was made on the part of the plaintiffs—not upon the ground, simply, of his being a party upon the record ; for it has been repeatedly holden, that that is not sufficient. *Butler* & al. v. *Elliott* & al. 15 *Conn. R.* 187. 205. *Woodruff* & al. v. *Westcott*, 12 *Conn. R.* 134. *Cowles* & al. v. *Whitman* & al. 10 *Conn. R.* 125. But the claim is, that he had an interest in favour of the defendants ; that having received of them the debt, he will be liable to refund to them, if they should be compelled to pay it again. Hence, it is said, he has an interest in defeating a recovery in the present suit.

The payment was made to *Tolles*, in his character of administrator, and as such he paid over the moneys received to those entitled to them, under the will of the deceased. There is no evidence that the payment was not made by the defendants, voluntarily, and with a full knowledge of all the facts. The rule is well settled, that moneys paid under such circumstances, cannot be recovered back. *East India Company* v. *Tritton* & al. 3 *B. & Cress.* 280. (10 *E. C. L.* 79.) *Hill* v. *Green*, 4 *Pick.* 114. *Denby* v. *Moore*, 1 *B. & Ald.* 123. *Bulkley* v. *Stewart*, 1 *Day*, 130.

But it is said, he had an interest, by reason of the bond, which he had given to indemnify the defendants. That bond had been by them given up to him, before he was offered as a witness. And it is not denied, but that the interest created by it, would have been removed, had it been delivered to him

*New-Haven, July, 1846.*

Beecher
*v.*
Buckingham.

*New-Haven,*
*June, 1846.*
Beecher
*v.*
Buckingham,

to be *cancelled.*    That was substantially the object of the delivery.    It was for the purpose of qualifying him as a witness.    He could not be so qualified, unless the obligation created by the bond was removed.

The case before us does not materially differ from the common and familiar one, where a party, during the trial, releases the interest of a witness, for the sole and avowed purpose of rendering him admissible.    The release operates to remove the legal objection to his competency, but leaves the degree of credit to be given him, when admitted under such circumstances, to be weighed and considered by the jury.    The effect of giving up to the witness the bond in the present case, was the same as delivering to him a release under seal.    It rendered him an admissible witness.

2. It was claimed in the court below, that the plaintiffs had no power to sell the note in question.    Their duty was to collect the money due upon it, not to transfer the instrument. A decision of this question is only necessary, in case a new trial should be granted.    But as the question has been argued by the counsel, we are disposed to express the opinion we have formed.

The statute requires executors and administrators to cause an *inventory* to be made of the real and personal estate of the deceased, and a *list* of his credits and *choses in action.*    Stat. 229. *tit.* 31. *s.* 12. (ed. 1838.)    Hence, it is said, they have not the same power over *choses in action*, as over other personal property.

The reason for not requiring an inventory to be made of such property, is very obvious—the difficulty of ascertaining their true value.    The deceased might have had many unsettled accounts with merchants, mechanics and others, with whom he had dealt.    To require the appraisers to go into an examination of these accounts, and determine the true value of each, would be a laborious and expensive task, productive of very little benefit to those interested in the estate.    Even in the case of promissory notes and bills of exchange, the instruments themselves would not, in all cases, furnish evidence of their true value.    Hence the legislature has deemed it sufficient to make a list of such evidences of debt, without requiring their value to be given by the appraisers.

The rule of law is well established, that the legal title to all

personal property of the deceased, vests in his legal repre-
sentatives. They can dispose of it at pleasure, being responsible for the faithful execution of the trust ; and can institute actions at law for the recovery of debts, as well as for the recovery of personal property. No good reason has been assigned for any distinction between their power in the two cases, nor any authority sanctioning such a distinction. But, on the other hand, decisions might be cited impliedly admitting the power to sell and transfer *choses in action*, as well as other personal property. *Bogert* v. *Hertell* & al. 4 *Hill*, 492. *Nugent* v. *Gifford* & al. 1 *Atk.* 463.

New-Haven, July, 1846.

Beecher v. Buckingham.

Cases might arise where the exercise of such power would be highly beneficial. Suppose the deceased had left bonds, secured by mortgages, payable at remote periods subsequent to his death. The avails might be needed for the payment of his debts. If no sale of them could be made, the payment of the debts might be unreasonably delayed. Ordinarily, a faithful representative would prefer collecting the debts due the estate, rather than to assign them to others. But we know of no rule of law depriving him of the latter power, if he deems it expedient to exercise it.

3. Again, it is said, that if both the plaintiffs conjointly possessed this power, it could not be exercised by one alone. The rule seems to be settled, beyond controversy, the other way, in the case of executors. One of two or more executors may sell and dispose of the personal assets, as fully as if all joined in the act of transfer. Each possesses a power over the whole funds. *Gardiner* v. *Callender* & al. 12 *Pick.* 376. *Bogert* v. *Hertell*, 4 *Hill*, 492. *S. C.* 9 *Paige*, 52.

Such being the rule in relation to executors, why should a different one exist in the case of administrators ? They both represent the deceased, and in other respects, possess like power over the assets. It is true, the distinction here claimed was recognized by Lord *Hardwicke*, in the case of *Hudson* v. *Hudson*, 1 *Atk.* 460. But the reasoning of the Chancellor upon the subject is not very satisfactory, especially when applied to the law of executors as it now exists, particularly in this state. Here, both executors and administrators substantially derive their authority from the same source—the court of probate. The former are designated by the testator—the latter by statute. Both must receive the approbation of the

court, before they are duly qualified to act. We see no good reason for making the distinction between their powers in this particular case, when they are so much alike in all other respects.

The title, therefore, of *Hinman*, the assignee of the note, although derived from one of the administrators, might have been good, were there no other difficulty in the case. But he purchased *a chose in action, not negotiable*, and therefore acquired *no legal title*. To enable him to reap the fruits of his purchase, it was necessary to institute an action at law; and this he could do only in the names of both the plaintiffs.

His authority to use *Beecher's* name is implied from the sale made by him. But in what manner has he acquired a right to use the name of *Tolles?* That has never been given. Had the latter joined in the sale, or made no objection to it, the assent might be implied. But in the present case, all presumption is removed, by an express dissent.

If *Hinman* has a right to prosecute the suit in *Tolles's* name, against his consent, it must be by virtue of the provisions of a recent statute. *Stat.* 66. *tit.* 2. *s.* 1. (ed. 1838.) That provides, that "whenever the defendant, in any suit upon a bond, note or other *chose in action* not negotiable, shall plead or give in evidence the discharge, admission or other act of the plaintiff, or any payment made to him, or any transaction whatsoever between the plaintiff and defendant, it shall be lawful for the plaintiff to reply or prove, as the case may require, an assignment of such *chose in action*, and notice thereof given to the defendant; and on the same being made to appear, such discharge, admission, payment or other transaction, shall be no otherwise available in such suit in favour of the defendant, than the same would or ought to be in a court of equity."

Before *Hinman* has collected the money due upon the note, *Tolles* has received it, paid it over to those who are entitled to it under the will, and given the defendants a release. This payment and the release are now set up in bar of the action at law. This defence will be effectual, unless the assignee is protected by the provisions of the statute. For one administrator at law has the same power to receive money due upon a note in favour of the estate and give a discharge, as the other has to sell that note.

In order, therefore, to determine the rights of the litigant

parties, we must enquire what are their equitable rights—what relief the assignee could obtain in a court of chancery: for the statute gives him nothing more.

*New-Haven.*
*July, 1846.*

Beecher
*v.*
Buckingham.

*Hinman* purchased of one administrator, knowing him to be a bankrupt, against the positive directions of the other. What was his duty under such circumstances? Obviously, to see that those interested in the estate, were not defrauded by the operation. We admit, that as a general rule, a purchaser from an administrator is not bound to see to the application of the purchase money. Here, however, the party bought under suspicious circumstances, knowing that he was placing it in the power of a bankrupt administrator to commit a fraud. Could he show, that the purchase money had gone for the benefit of the estate, there would be a strong equity in his favour. But that he has not done.

The other administrator has collected the debt, and paid it to those to whom it rightfully belongs. Were the parties all before a court of chancery, from whom could *Hinman* recover the debt? The legatees have nothing more than what is justly due to them. The defendants have paid all they owe, to the person legally authorized to receive it. *Tolles* has merely done what he was legally authorized to do. He has no money in his hands, belonging to either of the parties; and in discharging the trust confided to him, has violated no engagement that he has made.

To enable *Hinman* in equity to recover of either of these parties, he must show a superior equity. This he fails to do; and consequently, he fails to show a right to recover in his action at law. Could he show that the moneys he had paid, had been applied for the benefit of the estate, then it would follow, that some one would have received more than his due. As the case now stands, he fails to show, that any party, except *Beecher*, with whom he dealt, has been benefited, by the purchase money.

A new trial, therefore, must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.