PROBATE COURT OF NEWPORT *vs.* GEORGE B. HAZARD *et al.*

On the chancerization in a common law action of a bond given by an administrator with
the will annexed, requiring the administrator to make and exhibit within three months
"a true and perfect inventory of all and singular the goods, chattels, rights, and credits"
of the deceased which have or shall come to his possession or knowledge, or to the pos-
session of any other person for him; and to well and truly administer the same, and also
"all other the goods, chattels, rights, and credits" of the deceased, which may at any
subsequent time come to his possession, or to the possession of any person for him "ac-
cording to law and the provisions of the last will and testament of said deceased:"
*Held,* that the bond did not cover the proceeds of realty of the deceased sold by the admin-
istrator under the powers given by the will.
*Semble,* that Gen. Stat. R. I. cap. 173, § 32, which provides "the administrator with the
will annexed, who shall be appointed by the Court of Probate, shall have the same power
to sell and convey real estate as may be given by such will, or by law, to the executor
or executors thereof," gives to the administrator all the powers of the executor to sell
realty for all the purposes of the will, unless these powers were given to the executor by
the testator as a matter of personal confidence.

DEBT. Heard by the court, jury trial being waived.

This was an action against the sureties in the following bond
given to the Probate Court of the city of Newport:

"Know all men by these presents, That we, Benjamin Marsh,
2d, of the city and County of Newport and State of Rhode Island,
&c., as principal, George Babcock Hazard and John C. Stoddard,
of said city, county, and State, as sureties, are holden and stand
firmly bound and obliged unto the Court of Probate, in the city
of Newport, in the County of Newport and State of Rhode Island,
in the full sum of eight thousand dollars, to be paid to the said
court; to the true payment whereof we bind ourselves, jointly
and severally, firmly by these presents.

"Sealed with our seals this fifteenth day of March, in the year
of our Lord one thousand eight hundred and seventy-five.

"The condition of this obligation is such, that if the above
bounden Benjamin Marsh, 2d, who has been duly appointed ad-
ministrator with the will annexed of the estate of Laura Stewart,
late of the city of Newport, deceased, do make or cause to be
made a true and perfect inventory of all and singular the goods,
chattels, rights, and credits of said deceased, which have or shall
come to the hands, possession, or knowledge of the said Benjamin
Marsh, 2d, or unto the hands or possession of any other person
for him, and the same, so made, do exhibit upon oath, to the Court

of Probate of the city of Newport, within three months of the date hereof; and the same goods, chattels, rights, and credits, and all other the goods, chattels, rights, and credits, of the said Laura Stewart, at the time of her death, or which, at any time hereafter, shall come to the hands and possession of the said Benjamin Marsh, 2d, or to the hands and possession of any other person or persons for him, do well and truly administer, according to law and the provisions of the last will and testament of said deceased; and further do make, or cause to be made, a just and true account of his doings therein, and exhibit the same to said court, upon oath or affirmation, at or before the fifteenth day of March, which will be in the year one thousand eight hundred and seventy-six, or at any other time, whenever he may be required by the Court of Probate, then the before written obligation to be void and of none effect; or else to be and remain in full force and virtue.

"Benjamin Marsh, 2d, [L. S.]
"George B. Hazard, [L. S.]
"John C. Stoddard. [L. S.]

"Signed, sealed, and delivered, in presence of
Wm. Lovie Tilley.

"Filed this 15th March, 1875.
"Recorded in Record Book, page 8, by B. B. H."

*Newport, March* 15, 1880.  Durfee, C. J.  This is debt against the sureties on a bond given by Benjamin Marsh, as administrator with the will annexed on the estate of Laura Stewart, deceased.  The breach alleged, to wit: neglect to account after being cited, is admitted, and therefore judgment must be entered for the penalty, to be subsequently chancerized.  In connection with the chancerization, or preliminary to it, certain legal questions have been presented for decision.

The will and codicil were admitted to probate January 18, 1875.  The will devises a house and lot in Newport to Sarah Jones, a sister of the testatrix.  The codicil revokes or modifies the devise, making a new disposition, in these words, to wit:

"Whereas by the foregoing my last will and testament, I bequeathed my 'house lot,' on the easterly side of Broad Street, fronting on Cranston Street, Newport, R. I., to my sister Sarah

Jones, and have since, for the purpose of securing to her the more certain income, decided to alter or change the said bequest, and I hereby in this my codicil annul the said conveyance and direct my executor fully empowering him to sell the said house lot and appurtenances and invest the said proceeds in such security as he may consider best, holding the same in trust for my sister Sarah Jones, he paying over to her only the income which may accrue therefrom so long as she may live, and after her decease, then the principal of said investment to be equally divided among her several sons named in the foregoing will."

In the will, Marshall C. Slocum was appointed as executor. After the probate he renounced the appointment, before qualifying or doing anything as executor, and Benjamin Marsh was appointed in his stead, who qualified, giving the bond now in suit, which is in the usual form. The inventory, filed March 23, 1875, showed personal assets valued at $1,134.75. The administrator presented his first account January 24, 1876. It contained, besides credits of the amount of the inventory and of interest, a credit of $2,510.00 "by sale of real estate." The account does not show that this credit was for the proceeds of a sale of the house and lot above-mentioned, but in the argument it has been assumed that it was. The account showed a balance of $2,679.25 in favor of the estate, and was allowed as presented. January 29, 1877, the administrator presented a second account, showing a balance due the estate, at the same time tendering his resignation. This account was dismissed without allowance because no person appeared to support it. After its dismissal the administrator was cited to account, and did not do it. He admits, however, that on December 4, 1876, the balance due the estate was $1,782.28, and that he then had, and now has, no funds wherewith to pay it. It does not appear that any of the proceeds of the sale of the real estate was ever invested in any security in trust for Sarah Jones as directed in the codicil. The action is brought to recover the balance of the administration account from the defendants.

The defendants contend that they are not liable for the balance, *first*, because the fiduciary power to sell and invest, given by the codicil to the executor, did not devolve upon the adminis-

trator with the will annexed; and *second*, because their bond only covers the personal property of the deceased, and does not extend to her real estate, or to the proceeds of it when sold.

As a general rule, independently of statute, a power to sell land given by will to an executor will not devolve upon an administrator with the will annexed. But we have a statute, Gen. Stat. R. I. cap. 173, § 32, which provides that the administrator with the will annexed shall have the same power to sell and convey the real estate as may be given by the will to the executor or executors; and the question is, whether, under this statute, the administrator here did not succeed to the power conferred on the executor. The defendants, to show that he did not, cite the case of *Conklin* v. *Egerton's Adm'r*, 21 Wend. 430. · In that case it was held, under a statute enacting that administrators with the will annexed should have the same rights and powers as if they had been named executors, that a power given to an executor by will to sell and dispose of real estate, and divide the proceeds, could not be executed by an administrator with the will annexed, because the statute was to be construed as communicating to the administrator only the powers which the executor had as executor, to wit, his power over the personalty. The construction was narrow, and was not received with entire approval. *Egerton's Adm'r* v. *Conklin*, 25 Wend. 224; *In re Anderson's Estate*, 5 N. Y. Leg. Obs. 302. But, even if correctly decided, the case is no precedent for us; for by our statute the power to sell and convey *real estate* is communicated in express terms. Accordingly, in *Bailey* v. *Brown*, 9 R. I. 79, it was decided that an administrator with the will annexed is entitled to execute such a power for the purpose of paying debts and legacies. The difficulty in the case at bar is that the power given is not a simple power to sell and convey, but a power coupled with a direction to invest the proceeds of the sale and hold the investment on a continuing trust. In Pennsylvania, under a statute similar to ours, it has been decided that the administrator with the will annexed may sell in order to bring the land into a course of administration; *Evans* v. *Chew*, 71 Pa. St. 47; *Keefer* v. *Schwartz*, 47 Pa. St. 503; *Meredith's Estate*, 1 Parsons Cas. 433; but not to execute a trust for a collateral purpose, as, for instance, to invest for

accumulation, or to support the widow and children, or to turn land into money for the convenience of partition.   *Waters* v. *Margerum*, 60 Pa. St. 39; *Anderson* v. *McGowan*, 42 Ala. 280. But in other states where such statutes exist, this distinction does not appear to have been recognized, but the power, though given for a collateral purpose, has been held to pass unless involving a personal confidence or discretion.   *Brown* v. *Armistead*, 6 Rand. 594; *Broadus* v. *Rosson*, 3 Leigh, 12; *Peebles* v. *Watts' Adm'r*, 9 Dana, 102; *Gulley* v. *Prather's Adm'r*, 7 Bush, 167; *Dilworth* v. *Rice*, 48 Mo. 124; *Evans* v. *Blackiston*, 66 Mo. 437.   In this conflict of authority we incline to hold, in accordance with the more liberal view, that it was the intention of our statute to put the administrator with the will annexed, in respect of the power, as nearly as possible in the place of the executor, and, consequently, to hold that he succeeds to the power for the purposes for which it was given, and is bound to execute it and carry the purposes into effect, just as if he were the executor, unless the execution was intrusted to the executor as a matter of personal confidence or discretion.

We do not find it necessary, however, to decide the point definitively; for if we were to decide it in favor of the plaintiff, we should yet have to decide the case in favor of the defendants on the second point.

The second point is that the defendants are not liable for the proceeds of the real estate, because their bond does not cover them.   The bond, in this relation, requires the administrator to make and exhibit within three months " a true and perfect inventory of all and singular the goods, chattels, rights, and credits " of the deceased, which have or shall come to his possession or knowledge, or to the possession of any other person for him; and to well and truly administer the same, and also " all other the goods, chattels, rights, and credits " of the deceased, which may at any subsequent time come to his possession, or to the possession of any person for him, "according to law and the provisions of the last will and testament of said deceased."   We do not find in this language any expression which covers real estate, or the proceeds of real estate sold under the will.   The only way in which the language can be held to cover real estate sold under

the will is by a construction borrowed from the doctrine of equitable conversion, under which land directed to be sold is treated in equity as money.  In Pennsylvania the doctrine has been applied in the construction of similar bonds, and the sureties held. *Commonwealth* v. *Forney*, 3 W. & Serg. 353 ; *Zeigler* v. *Sprenkle*, 7 W. & Serg. 175.  We do not see, however, upon what principle the doctrine can be applied in a common law action on the bond. If it can be applied, and land is money because directed to be turned into money, then, by virtue of the same doctrine, money is land if directed to be turned into land, and the sureties, if held in one case, should be exempt in the other.  It seems to us that the doctrine is inapplicable.  The plaintiff refers also to cases from Indiana: *Reno* v. *Tyson, Adm'r*, 24 Ind. 56 ; New Hampshire : *Judge of Probate* v. *Heydock,* 8 N. H. 491 ; and Missouri : *Governor of Missouri* v. *Chouteau*, 1 Mo. 731.  But in Indiana the condition of the bond is that the executor or administrator shall faithfully perform his duties as such, and when real estate is directed to be sold by the will, the bond is required to be taken for double the value of the real estate, in addition to what would otherwise have been required.  In New Hampshire and Missouri, the bond is given for the faithful administration of " the estate," and so is held to cover whatever comes to the hands of the executor or administrator in the course of his administration.  In Missouri, under such a bond, it has been decided that the sureties are liable for the misapplication of the rents and profits of land received by the executor or administrator, though this is contrary to the uniform current of decision in other States.'  We think, therefore, the cases last named are entitled to little or no weight in construing the bond before us.

The most careful and learned discussion of the subject which we have anywhere found is contained in the opinion of the court in *Jones* v. *Hobson*, 2 Rand. 483 ; and in that case it was decided that the sureties on an executor's bond are not liable for the proceeds of real estate sold by him under the will.  The condition of the bond was that the executor should well and truly administer the goods, chattels, and credits of the deceased, according to law ; and further pay the legacies as far as the goods, chattels, and credits would extend " according to the value thereof

*and as the law shall charge him.*" The contention was that the sureties were bound by virtue of the words italicized. The court held that these words meant simply that the legacies were to be paid out of the goods, chattels, and credits, not only as far as they might extend, but also in such manner as the law required. In Kentucky the same words received a different construction. *Moore* v. *Waller's Heirs*, 1 A. K. Marsh. 488. But, independently of these words, which our bonds do not contain, it was not supposed, either in Kentucky or in Virginia, that the sureties would have been bound.

The bond required in this State of an executor or of an administrator with the will annexed is simply an adaptation of the ordinary administrator's bond, which has never been thought to cover anything but personal estate. Our administrator's bond is almost word for word the bond prescribed by 22 & 23 Charles II. cap. 10, for administrators in England, where administrators have nothing to do with real estate, the only material addition being the word "rights," which can mean only such rights of the deceased as survive to the personal representative. Whenever it becomes necessary, in the course of the administration, to sell the real estate, an additional bond is taken for the protection of the proceeds, because the sureties on the original bond are not held to answer for them. *Beale's Executors* v. *The Commonwealth*, 17 Serg. & R. 392; *Reno* v. *Tyson, Adm'r*, 24 Ind. 56. It would be singular if the same language should not have the same meaning in an executor's as in an administrator's bond. And that it has not generally been thought that the proceeds of real estate, sold under a will, were protected by the bond, is shown by the statute recently passed for the insertion of new words to that end. Pub. Laws R. I. cap. 558, April 20, 1876.

The plaintiff contends that it was a breach of the bond for the administrator not "to invest on security" as directed by the will. We do not so construe the bond. It was "the goods, chattels, rights, and credits" of the deceased, and not the proceeds of her real estate sold after her death, which, according to the condition of the bond, the administrator was required to administer according to the will.

The plaintiff also contends that the defendants are concluded

by the judgment of the Court of Probate finding the balance of the administrator's account against him. If the plaintiff means by this that the defendants are liable for the entire balance, or for any portion of it beyond the excess of the personal assets over the expenditures, we think the position is not tenable; for the account itself shows, on the face of it, that the balance is made up chiefly of a credit to which their contract of assurance does not extend. *Beale's Executors* v. *The Commonwealth*, 17 Serg. & R. 392.

Our conclusion is that the defendants, on the chancerization of the bond, cannot be held to answer for the loss or misapplication of the proceeds of the real estate sold under the will, or of any portion of them.                    *Judgment for plaintiff.*

*Samuel R. Honey*, for plaintiff.

*William P. Sheffield & Francis B. Peckham, Jr.*, for defendants.