STATE EX REL. ELMER HOUNSOM, BY HIS CURATOR, E. L. FRENCH, Plaintiff in Error, v. A. G. MOORE ET AL., Defendants in Error.

Kansas City Court of Appeals, June 15, 1885.

1. ACTION—PERSONAL PROPERTY—VESTING OF AT DEATH.—"Both at law and in equity the whole personal estate of the deceased, vests in the executor or administrator." 1 Williams on Executors 717, 718. Contingent as well as all absolute interests, in personal property and *choses in action*, pass to the executor or administrator, and as no title to the personal property vests in the next of kin, as such, they can obtain their distributive share only through administration. *Murphy v. Hanrahan*, 50 Wisconsin 485. Nor can the heir maintain the action without the intervention of the administrator, even though he be the sole distributee of the estate. *Bradford v. Felder*, 2 McCord (Ch.) 168; *Lakey v. Maupin*, 10 Mo. 373; *Smith v. Dinney*, 37 Mo. 20; *Hanenkamp's Admr. v. Bergemier*, 32 Mo. 569.

2. —— STATUTE PROVISIONS AS TO NON-RESIDENT DECEDENTS.—Our administration law makes provision for the disposition of the estate of a non-resident decedent. Sect. 4 and 268, Rev. Stat. Mo., 1879. And section 3382, makes provision in partition proceedings for the temporary care of the estate of such absent distributees. The order in this case was pursuant to the statutes. The whole scheme of our statute contemplates that such estates of deceased parties (non-resident) shall first pass through the hands of administrators. The estate is primarily liable for the debts of the intestate. The assets in the hands of an administrator in this state, before he can transfer them to the state of the intestate's domicil, must satisfy all debts here. Sect. 271, Rev. Stat. Mo., 1879. The law does not contemplate that each heir (under circumstances like this) can rush into court, without administration, and seize his alleged interest.

ERROR to Schuyler Circuit Court, HON. ANDREW ELLISON, J.

*Affirmed.*

The facts sufficiently appear in the opinion of the court.

E. L. FRENCH, for plaintiff in error.

I.    The court erred in refusing to give plaintiff's instruction as to limitation. *Dillon's Admr. v. Bates*, 39 Mo. 292; *Butler v. Lawson*, 72 Mo. 227; *Reilly v. Chonquette*, 18 Mo. 220. Death may be proved by any satisfactory evidence. *Hancock v. Ins. Co.*, 62 Mo. 26; *Lancaster v. Ins. Co.*, 62 Mo. 121.

II.    Unless the statute of limitations commenced to run against John Elliott in his lifetime it did not run against Elmer E. Hounsom during his minority. *Matherson v. Davis*, 2 Coldwell (Tenn.) 443; *Wingfield v. Virgin*, 51 Georgia 131; 7 Waits. Actions, § 281. His part of the money constituted a trust fund in the hands of the sheriff, and a demand of payment and refusal to pay was necessary to put the statute in motion. Sect. 3382, 3397, Rev. Stat. Mo. (1879); *State ex rel., etc., v. Dailey*, 4 Mo. App. 172; *State, etc., v. Miner*, 44 Mo. 373; *Keeton's Heirs v. Keeton's Admr.*, 20 Mo. 530.

III.    All limitation laws must proceed on the idea that the party barred has full opportunity afforded him to try his rights in the courts. Cooley's Const. Lim. (4 Ed.) 456.

IV.    Defendant Moore never complied with the order of the court, entered at March term, 1879, introduced in evidence by defendants. This cause of action did not accrue in favor of minor (Hounsom) until June, 1881, when demand was made by his curator, and his being under age when suit was commenced prevented the statute of limitations from being put in motion at all. Sect. 3234, Rev. Stat. Mo., 1879.

HIGBEE & RALEY, for defendants in error.

I.    After the court ordered distribution (in the partition proceeding) the statute of limitation began to run, and after three years claim was barred. (The *second* payment was never reported to the court, and the statute did not start until demand was made, and so *it* was not barred; and we admit our liability for this and deposit all money due to plaintiff and costs). Where a sheriff

fails to pay over money that it was his duty to pay, the limitation is three years. Sect. 3231, Rev. Stat. Mo. (1879), and the statute, in this case, begins to run when the sheriff reported to the court that he had the money, to-wit, April 28, 1875. *State v. Spencer*, 79 Mo. 316; *State, etc., v. Miner*, 44 Mo. 374; *Kirk v. Sportsmen*, 48 Mo. 383; *Lesern v. Neal*, 53 Mo. 419.

II. The court did *not* find that Elliott was dead; and this court will not disturb the finding unless there is no evidence to support it.

III. Elliott was a party defendant to the partition suit brought by plaintiff and other relatives against him for April term, 1874. Final judgment was rendered at August term, 1874. And *four years later* plaintiff procured an order for investment assuming that Elliott was alive. The plaintiff's *theory* here is inconsistent with his *action* heretofore.

IV. The statute about trustees has nothing to do with this case. This is the case of a sheriff who collected money and did not pay it over, and section 3231, Revised Statutes, governs it.

Opinion by PHILIPS, P. J.

The facts of this case, essential to its determination, are substantially as follows: One Sarah Elliott died, prior to 1874, seized of certain lands, which descended to the plaintiff, Elmer E. Hounsom, and others, as her heirs at law. Among such heirs was one John Elliott. In 1874 there was a suit in partition of said lands among said heirs. The plaintiff here was a plaintiff in that suit, and the said John Elliott was a party defendant brought in on order of publication. Judgment of partition was had therein, and the land sold, under the decree of the court, for division among the said parties. Pursuant to this decree the defendant, Moore, as sheriff of Schuyler county, made the sale on the following terms: One-third for cash, and the balance on one and two years' time. The cash realized and paid to the sheriff amounted to $450, and he took notes for the deferred payments of $450, each. After deducting the

costs of suit and sale, there remained in his hands of this cash payment the sum of $317.45. In April, 1875, the sheriff made his report of sale, which was by the court approved, and an order of distribution made. He paid over the money so collected to the parties, according to their respective interests, except the distributive share of said John Elliott, who did not appear to claim it.

In 1876 said sheriff collected the first of the two notes taken for the deferred payments, amounting to $495.

The plaintiff, a minor, brings this suit, by his curator, French, against the sheriff and the sureties on his official bond, claiming that said John Elliott had not been heard from for many years, and that he was believed to be dead, and it was so averred. The plaintiff claims as one of the heirs of said John Elliott, and demands that the sheriff pay over to him the share claimed by him as heir in the distributive share of said John Elliott in the moneys so collected by said sheriff.

The defendant conceded the right of plaintiff to have his share as an heir of John Elliott in the second sum collected, which amounted to about $25, which sum, together with the costs of this suit, he made tender of by paying the same into the court. As to the interest in the first sum collected the defendant pleaded the statute of limitations of three years. He also tendered the general issue.

On the trial had before the court, without the intervention of a jury, the plaintiff made some proof to the effect that said John Elliott had not been heard from for many years, and that when last heard from, he wrote that he was sick with consumption and was coming home to his relatives in Schuyler county in this state.

The plaintiff asked declarations of law from the court, to the effect that if the court believed from the evidence that said John Elliott was dead, that he had died prior to April, 1875, the statute of limitations did not apply, etc. The court refused the instructions, and gave plaintiff judgment for the sum so tendered, and

costs up to the time of tender, etc. The plaintiff prosecutes this writ of error.

1. This is a somewhat novel action, and at best it involves such an inconsiderable sum, about $14, that the curator is censurable for prompting the prosecution of the action further at the expense of the minor's estate.

Aside from the question discussed by the counsel, I do not perceive how plaintiff can maintain this action. By basing this suit on the distributive share of John Elliott as ascertained by the judgment in the partition proceeding, to which plaintiff was a party, he recognized the validity of that judgment. *Forder v. Davis*, 38 Mo. 107. Plaintiff also necessarily admits that John Elliott was living at the time of the rendition of that judgment. It concluded all parties thereto, and operates as an estoppel upon them, and all in privity with them. The deed made by the sheriff, pursuant to the decree, stands, in law, as the deed and act of the parties themselves. *Pentz v. Keuster*, 41 Mo. 447.

The title to the land was, therefore, divested out of the heirs, and vested in the purchaser. The only interest the heirs thereafter had in this inheritance was in the proceeds of the sale, which became mere personal property. *Gov'r. of Missouri ex rel. v. Chouteau*, 1 Mo. 731; *Dix v. Morris*, 1 Mo. App. 93; 1 Williams Ex. (7 Ed.) 729–739.

Conceding, therefore, that John Elliott died intestate, to whom would his interest in this purchase money descend, and who would be entitled to bring action therefor? The question is answered by the well settled rule, that "both at law and equity, the whole personal estate of the deceased vests in the executor or administrator." 1 Williams Ex. 717–718.

Contingent, as well as all absolute interests, in personal property and choses in action, pass to the executor or administrator. *Beecher v. Buckner*, 18 Conn. 110. And as no title to the personal estate vests in the next of kin, as such, they can obtain their distributive shares only through administration. *Weeks v. Jenett*, 45 N. H. 540; *Weedin v. Bagley*, 13 Wend. 453; *Marshall v.*

*King*, 24 Miss. 85 ; *Allen v. Simons*, 1 Curtis 124 ; *Wait v. Ray*, 4 Ired (law) 14 ; *Short v. Farmer*, 4 Dev. & Bat. (law) 122 ; *Miller v. Eatman*, 11 Ala. 609. This doctrine is emphasized in *Murphy v. Hanrahan*, 50 Wis. 485.

Nor can the heir maintain the action without the intervention of the administrator, even though he be the sole distributee of the estate. *Bradford v. Felder*, 2 McCord Ch. 168 ; *Cochran v. Thompson*, 18 Tex. 652.

We need not discuss the effect of a settlement among the heirs, and a domestic distribution, where there are no creditors, and no administration. The supreme court of this state has not left the question at bar open. In *Leakey v. Maupin*, 10 Mo. 373, Scott, J., said : "To hold that the personal estate, on the death of an intestate, descended to his heirs, would be to overturn all notions in regard to the administration of such property, and would be productive of endless confusion in administering estates, but even if the right to personal property did descend to Maupin immediately on the death of his father-in-law, still it was a mere right. The possession rightfully went to the administrator, etc."

In *Smith et al. v. Dinney et al.* (37 Mo. 20), the plaintiffs claimed certain slaves as the heirs at law of Rachel Smith, deceased. The bill charges that she died intestate, and that no letters of administration had ever been granted on her estate. Wagner, J., said : "Upon the death of said Rachel Smith, the property being personal property, belonged to her administrator and not to the heirs. The appellants who claim to be heirs, are proceeding as if it were real estate ; but, being purely personal in its nature, there must be an administrator to represent it before an adjudication can be had in court. Personal property must be administered on before the heirs can claim their distribution shares." *Vide Hanenkamp's Admr. v. Bergmier*, 32 Mo. 569. There is nothing in this record to show where John Elliott died, if he be dead at all. But our administration law makes provision for administration in case of non-residents dying, leaving property in this state. (Sect. 4

and 268 Rev. Stat). It also makes provision for the disposition of the estate of such non-resident decedent, (Art. 12 Ch. 1), and section 3382 makes provision, in partition proceedings, for the temporary care of the estate of such absent distributee. And the record shows that the circuit court made the order as provided by this section. In short, the whole scheme of our statute contemplates that such estates of deceased parties shall first pass through the hands of administrators. The estate is primarily liable for the debts of the intestate. The assets in the hands of an administrator in this state, before he can transfer them to the state of the intestate's domicil, must satisfy all debts here. (Sect. 271). The law does not contemplate that each heir, under circumstances like this, can rush into court, without administration, and seize his alleged interest.

The judgment of the circuit court was, necessarily, for the defendant, and its judgment must be affirmed. All concur.