AMOS J. JACQUES *vs.* THE BRIDGEPORT HORSE RAILROAD COMPANY.

Upon a hearing in damages the court below admitted evidence that was inadmissible, subject to objection, and held the same under consideration with the other evidence during a protracted trial and up to the final decision, when it was ruled out. The damages awarded were excessive. Held that, while a large discretion must be allowed a judge in such a matter, yet that the course taken was very objectionable, and, in view of the damages given, and of the possible effect of the evidence on the mind of the judge as indicated thereby, was ground for granting a new trial.

The plaintiff claimed damages for being disabled from the practice of his profession as a physician by an injury caused by the negligence of the defendants. Held that the defendants might show that his practice was an unlawful one.

And that his professional reputation in this respect might be shown.

The defendants, a horse railroad company, offered evidence to show that no repairs had been put upon their track since the accident. Held that the testimony of a witness, offered by the plaintiff, as to his knowledge of the condition of the track at a certain time shortly before the accident, was not admissible as rebutting this evidence.

TRESPASS ON THE CASE, for an injury caused by the negligence of the defendants ; brought to the Superior Court for Fairfield County. The defendants demurred to the declaration, the demurrer was over-ruled, and the case heard in damages before *Minor, J.* The court found the following facts :

The plaintiff was driving along in his carriage on Main

street in the city of Bridgeport, between Congress and Chapel streets, on the 3d day of July, 1871, and undertook to cross over the track of the defendants' horse railroad, the rails of which at that place were from three to eight inches above the road-bed on the outside of the rails, and while so crossing the fore axle of the plaintiff's carriage was broken, and he was thrown with great violence upon the sidewalk, and received very severe and dangerous injuries. The accident was caused entirely by the negligence of the defendants in not keeping their track in proper repair, the plaintiff not being guilty of any want of proper care.

The plaintiff offered testimony to show that a large number of accidents, similar in character to the one in question commencing three years before, and terminating one year after this accident, had happened at or near the same place, without bringing such accidents to the knowledge of any of the officers of the defendant company, or showing the cause and manner of any of the same. To this testimony the defendants objected; but the court permitted the same to come in, subject to objection to be heard in the argument.

After the argument the whole of the testimony was ruled out and rejected, and no portion of it was considered by the judge, who so stated in open court when rendering his decision in the case.

As a ground of damages the plaintiff claimed that on account of his injuries he was unable to attend to his business, which was that of a practicing physician and surgeon, for sixty days in 1871 immediately following his injury, for twenty-five days in the early part of 1872, and for the whole time from December 1st, 1872, to October 13th, 1873, which the court found to be true. The receipts of the plaintiff from his professional practice were about $5000 a year.

With reference to the professional practice of the plaintiff, and for the purpose of showing that it was unlawful, the defendants asked of the plaintiff in his cross-examination as a witness, the following questions: " When you were absent in 1864 and 1865, was it not claimed that you were guilty of mal-practice in your profession?" and " Was your practice

in 1864 and 1865 substantially the same as at the time of your injury ?" To these questions the plaintiff objected, and the court excluded them; to which ruling the defendants excepted.

The defendants introduced one Vantine as a witness, to whom they put the following question: " As respects the lawfulness or unlawfulness of his practice as a physician, what was the reputation of Dr. Jacques in 1871 and thereafter, up to the time he stopped practice ?" To this question the plaintiff objected, and the court excluded it; to which ruling the defendants excepted.

The defendants introduced testimony to show that no repairs had been made on their track at the place of the accident, which was at a turn-out, from the time of the accident up to the time of the trial, namely, from July 3d, 1871, to October 5th, 1873. In rebuttal the plaintiff introduced Capt. John Brooks as a witness, who testified that he saw the track before the injury and after, and that repairs had been made in less than one month after the accident. Among the questions put to the witness was the following: " State, if you know it, the condition of the turn-out in the month of June, 1871." To which the witness answered, " Within a week or two of the fore part of June, I drove over the track and found it in a very unseaworthy condition." To this question and answer the defendants objected, but the court overruled the objection and admitted the same.

The plaintiff claimed that from and after the month of December, 1872, he was entirely incapacitated from attending to his professional business on account of his injuries; that his health had been entirely destroyed, and that before the injuries he had been an active and vigorous man ; all which was proved to be true by the testimony offered. The plaintiff further claimed that he was suffering with Bright's disease of the kidneys, which was developed in its chronic form in the month of December, 1872, and was produced by his injuries on the 3d of July, 1871. It was not proved to the satisfaction of the court that mechanical violence will ever produce Bright's disease, but it was proved that injuries of

the character of those sustained by the plaintiff would materially assist in developing the disease, which otherwise might and probably would remain dormant in the system. It was found that the injuries received by the plaintiff were the exciting cause of the manifestation of Bright's disease in his case.

On these facts, the court found that the plaintiff had suffered damages from his injuries to the amount of $7,500.

The defendants moved for a new trial for error in the rulings of the court, and on the ground that the damages were excessive and unwarranted by the evidence.

*G. H. Watrous* and *G. Stoddard*, in support of the motion, cited—as to the impropriety of the court receiving inadmissible evidence and holding it so long under consideration, *Doe* v. *Perkins*, 3 T. R., 749 ; Hilliard on New Trials, ch. 13, §§ 3, 5, 6, 40 ; *Ashmead* v. *Colby*, 26 Conn., 309 ; *Harris* v. *Town of Woodstock*, 27 id., 572 ;—as to evidence of the unlawful character of the plaintiff's practice being admissible, Shearm. & Redf. on Negligence, § 599 *a* ; *Kane* v. *Johnston*, 9 Bosw., 154 ; *Sherman* v. *Fall River Ironworks Co.*, 2 Allen, 524, and 5 id., 213 ; *Abbott* v. *Wyse*, 15 Conn., 254, 260 ; *Isbell* v. *N. York & N. Haven R. R. Co.*, 25 id., 562 ;—as to evidence of reputation in this respect being admissible, *Wheeler* v. *Packer*, 4 Conn., 106 ; *State* v. *Watkins*, 9 id., 53 ; *Belden* v. *Lamb*, 17 id., 450 ; *Ogden* v. *Raymond*, 22 id., 383 ; *Calkins* v. *City of Hartford*, 33 id., 60 ; Hilliard on Remedies for Torts, book 4, ch. 2, § 55 ; and as to the inadmissibility of the testimony of Brooks, *Hutchinson* v. *Inhabitants of Methuen*, 1 Allen, 33.

*Sanford*, with whom was *Shelton*, contra, cited—as to the inadmissibility of the evidence with regard to the illegal character of the plaintiff's practice, and with regard to his professional reputation, *Goddard* v. *Pratt*, 16 Pick., 433 ; *Sheldon* v. *Root*, id., 570 ; *Humphrey* v. *Humphrey*, 7 Conn., 116 ; *State* v. *Randolph*, 24 id., 363 ; *Wright* v. *McKee*, 37 Verm., 161 ; Swift's Ev., 140 ;—and as to the testimony of

Brooks being admissible, *House* v. *Metcalf*, 27 Conn., 361 ; *State* v. *Alford*, 31 id., 46 ; *Calkins* v. *City of Hartford*, 33 id., 57.

FOSTER, J. The injury of which the plaintiff complains was received by him on the 3d of July, 1871. He was at that time driving in his carriage in the city of Bridgeport, and in crossing the track of the defendants' railroad, his carriage was broken, and he was thrown out, falling violently upon the sidewalk. The injury is alleged to have been owing to the negligence of the defendants in not keeping their road-bed and track in proper condition and repair.

The plaintiff offered evidence to prove that a great number of accidents, similar in character to the one complained of, commencing three years before, and terminating one year after that event, had happened, at or near the same place on the defendants' road, without showing that such accidents came to the knowledge of the defendants' company, and without showing the cause or manner of the accidents. The defendants objected to the admission of this testimony, but the court admitted it, subject to future consideration. In rendering final judgment in the case, the court ruled out and rejected this testimony.

That this testimony was objectionable, as tending to raise collateral issues, and on various other grounds, need not perhaps now be discussed, as it was finally ruled out of the case. The defendants however insist that injustice has been done them by admitting this testimony, and allowing it to remain as evidence during the whole of a protracted trial, up to the moment of the final decision.

Courts must be allowed a discretion in the matter of admitting testimony, so far as the order of it is concerned. The safer rule generally is, to admit no testimony till the proper foundation for its admission has been laid. This rule however is by no means inexorable ; it must depend on the exigencies of each particular case.

There is nothing apparent on this record going to show that the plaintiff proposed to offer any testimony to make

this evidence admissible, or that he did offer, or that he attempted to offer, any such testimony. The time within which the accidents, as to which proof was offered, occurred, embraced a period of four years. As soon, at least, as the plaintiff had closed his testimony, and when, if ever, it was apparent that this testimony as to these accidents was inadmissible, we think it should have been ruled out. The defendants would not then have felt called upon to answer it, as by allowing it to remain in evidence they must have supposed it necessary to do. Thus a multitude of collateral questions were presented, distracting the minds of the court and counsel, and withdrawing their attention from the main issue. We cannot but regard this as very objectionable.

Nor is the effect of this testimony upon the mind of the judge, in reaching the decision pronounced on the merits, to be entirely disregarded. We cannot accede to the claim of the plaintiff, that the defendants could not have been injured by this testimony because it was ultimately rejected and ruled out. The operations of our minds are mysterious even to ourselves. We cannot always appreciate the influences which lead us to a result. No doubt the judge who tried the cause intended to disabuse his mind of any influence from this testimony. No doubt he was unconscious of being affected by it. Possibly he was not; still we do not deem it improbable that he was, especially when we look at the amount of damages assessed in the case, which seem to us unwarrantably large in view of the legitimate evidence.

The plaintiff claimed to recover damages not only for bodily injuries, and injuries affecting his health, but also for losses sustained in his profession, which was that of a physician and surgeon, by being thrown out of practice.

The defendants claimed that the professional practice of the plaintiff was illegitimate and unlawful, and, for the purpose of proving that claim, proposed certain questions to the plaintiff, which were objected to and excluded by the court. The defendants also introduced a witness of whom they asked, what was the reputation of Dr. Jacques as a physician in 1871, and thereafter, up to the time when he stopped busi-

ness, as to the lawfulness or unlawfulness of his practice. To this question the plaintiff objected, and the court excluded it.

As the plaintiff sought to recover damages on account of being disabled from practicing his profession, his reputation, as to the lawfulness or unlawfulness of his practice, became a proper subject of inquiry. The value of that practice must have depended very largely upon that reputation. If his practice was unlawful, no matter how lucrative it might have been, the loss of it would lay no foundation for the recovery of damages. The questions put to the plaintiff, and also to the other witness, may not have been the best mode which could have been adopted for reaching the truth ; still we think the questions should not have been excluded. The plaintiff's claim, in effect, put his professional reputation in issue and made these questions proper. The answers to them would tend to throw light upon the subject which the defendants had a right, under the circumstances, to investigate.

To rebut evidence offered by the defendants, that no repairs had been made on their railroad track, at the place of the accident, from the time it happened, up to the time of trial, the plaintiff offered a witness, whom he asked to state if he knew what the condition of the turn-out was in June, 1871. This question, and the answer given to it, were objected to by the defendant, but admitted by the court. By way of rebuttal, and in that way only it seems to have been offered, this testimony was clearly inadmissible. Where a party has casually omitted to offer evidence in chief upon any point in his case, the court will doubtless allow him to supply the omission if justice demands it, or would seem to be promoted by it, even after the defendant had gone through with his case. The discretion of a court, when exercised on such questions, is not, ordinarily, a subject of revision. No great importance can, as we think, be attached to the testimony thus objected to, but in the particular form in which the question is presented on the record, it seems to us inadmissible.

We deem it unnecessary to discuss any other points which

may have been alluded to in the course of the trial. Believing that the court erred in the several rulings and decisions which we have specified, and being clearly of opinion that injustice has been done in the amount of damages assessed, the motion for a new trial is granted.

In this opinion the other judges concurred.