IRENE M. BUCKINGHAM'S APPEAL FROM PROBATE.

New Haven and Fairfield Co's., Jan. T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

*C, who had several thousand dollars standing to her credit in a savings bank, requested the teller of the bank to transfer $1,500 to each of three nieces whom she named, one of whom was with her, which he did, charging her account with $4,500, and opening an account with each of the nieces for $1,500, and preparing a bank book for each. C requested that the bank books should be so made that the money could not be drawn out during her life, and the teller endorsed on each of them—" Only Mrs. C has power to draw." C and the niece who was present wrote their names in a signature book kept by the bank, the teller adding to C's name the word " Trustee." The names of the others were afterwards written by them on slips and sent to the bank, the teller writing C's name with the word trustee added. C had before the transfer declared her intention to make the gifts. After the transfer she took the new books and kept them during her life. It was found that she so held them only as trustee for the nieces, and that the*

nieces accepted the gifts in her lifetime. Held to be a valid gift *inter vivos.*

*B*, one of the residuary legatees under the will of *C*, appealed from a probate decree allowing the final account of the executor, in which he had not charged himself with money which he claimed had been given to these nieces by *C* in her lifetime. *B* had previously procured her daughter, also one of the residuary legatees, to bring a bill in equity against the executor and the three nieces, to compel the latter to pay to the executor the money so received and the executor to receive and account for it, and had employed counsel to manage the suit, and upon the facts proved the bill had been dismissed. Held that though *B* was not a party on the record, yet that she was an actual party to that suit, and that the decree was admissible against her upon the trial of the probate appeal.

The decree did not show the facts on which it was based, but the opinion of the court stated them. Held that the opinion was inadmissible as not being in itself evidence.

It might be shown by parol evidence what was in issue in the former case.

Where inadmissible evidence has been received by the court below, unless it clearly appears that no harm could have been done, the safer rule is to grant a new trial.

The legal title to all personal property of a decedent vests in his legal representative, who holds it as trustee for all parties interested in it.

[Argued January 21st—decided March 4th, 1891.]

APPEAL from a probate decree accepting and approving the administration account of the executor of the will of Irene Clark, deceased ; taken to the Superior Court in New Haven County. The case was heard before *Robinson, J.,* by whom the following finding of facts was made.

Irene M. Clark died in April, 1887, leaving a will, dated November 11th, 1881, which was duly probated, by which she gave all the residue of her personal property to the appellant and five others, to be equally divided among them.

On the 15th of October, 1884, she had on deposit in the Connecticut Savings Bank of New Haven $5,871. A few days prior to that date she told one Georgiana Hubbell that she was going to give to each of her nieces, Mary Bell Clark, Emma Clark, and Ellen C. Platt, a sum of money, and requested her to go with her to New Haven for the purpose. This she was unable to do, and Mrs. Clark then requested the said Ellen C. Platt to go with her. On the 15th of October, 1884, Mrs. Clark and the said Ellen went together to

the savings bank at New Haven, and Mrs. Clark told the teller to write up her deposit book, and desired that $1,500 should be transferred from her account to each one of the three nieces named. This was done, and three new accounts were opened in their names. Each was credited with $1,500, and Mrs. Clark's account was reduced $4,500.

Three new pass-books were made out in the names of the three new depositors, and were given to Mrs. Clark. She told the teller, in the presence and hearing of said Ellen, that she wanted to have the bank books so fixed, or the entries so made, that the money should belong to the three nieces named by her, but so that they could not draw it out and spend it during her life. The teller therefore entered upon each of the pass-books—" Only Mrs. Irene Clark has power to draw." The ledger accounts of these deposits were in the names of the three nieces. Mrs. Clark declared to Mrs. Platt while at the bank that she had given her $1,500, and that she had given the same amount, each, to Emma Clark and Mary Bell Clark.

The bank had a book called a signature book, in which was entered the signature of each depositor, with other facts relating to the depositor, for purposes of identification. When the bank books were given to Mrs. Clark, Mrs. Platt wrote her name on this signature book opposite the number of the book in her name, and Mrs. Clark also signed under the name of Mrs. Platt, and the two names were included in a bracket. The teller added to the name of Mrs. Clark the word " Trustee." The words " Mrs. Clark only to draw," were also written in the margin by the teller. Bank slips were also handed to Mrs. Clark by the teller, and she was desired to obtain the signatures of Emma Clark and Mary B. Clark upon those slips, and to have them write upon the slips certain other required facts, and return the same to the bank, to be pasted in the signature book.

On the same day, upon her return to Milford, Mrs. Clark showed these three bank books to the husband of Mrs. Ellen C. Platt, and said to him that she had given the girls $1,500

each, and that the girls should share equally in the will, as if she had not given them the money; she also showed him the two slips, and instructed him to have Emma Clark and Mary B. Clark informed that these slips must be signed and returned to the bank. Emma Clark called at Mrs. Clark's house, and was told by her that she had given each of her said nieces $1,500; she was shown the pass-book issued to herself, and those issued to the other two nieces, and was given the slip to fill out, sign and return to the bank. At the same time Mrs. Clark gave to Emma Clark's husband the slip for Mary B. Clark, with instructions to deliver it to her to sign and return to the bank. The slip delivered to Emma Clark and the one sent to Mary B. Clark were filled out and signed by them, and returned to the bank, where the signatures were pasted in the signature book in their appropriate places. After these signatures were pasted in the book the teller wrote under each signature the words " Mrs. Irene Clark, Trustee," and on the margin, the words " Mrs. Clark only to draw."

Afterwards, and within a few days, Mrs. Clark and Mary B. Clark met, and Mrs. Clark informed her that she had made her a gift of $1,500, and informed her of the fact of her having taken out a bank book in her name for that sum, and also named the other two nieces as having received from her a like gift. Mrs. Clark also inquired of her whether she had received her paper, referring to the slip, and whether she had signed it and returned it to the bank.

Mrs. Clark after her return from New Haven declared to a number of her personal friends and neighbors that she had given to these nieces $1,500 apiece, and to two of these persons stated in addition that notwithstanding these gifts her nieces were to share equally with the others under her will. The bank books were retained by Mrs. Clark in her possession.

Mrs. Clark, at the time she made the transfers at the bank from her own name to the names of the nieces, intended to give to each of them the sum deposited in her name, and intended to retain custody and control over the bank book and

deposit only as trustee for them. The teller at the bank was honestly attempting in making the various entries on the deposit books, and in the signature book, to carry out this intention of Mrs. Clark thus expressed to him. The court finds that the donees accepted the gifts of the sums of money so deposited.

The bank books remained in the possession of Mrs. Clark until her death, with the exception of a short period before her death, when they were delivered to Mrs. Ellen C. Platt, with four other bank books belonging to Mrs. Clark absolutely, she remarking at the time—" Nellie, I want you to take these bank books and keep them until I call for them: possession is half." They were retained by her for a few days, when they were asked for by Mrs. Clark and returned to her.

Shortly after October 15th, 1884, Mrs. Platt informed the appellant that Mrs. Clark had given the three nieces $1,500 each, and on December 14th, 1884, the appellant wrote a letter to Mrs. Clark, saying she had been informed of the gifts, and asked her to give her some money that was deposited in the Bridgeport Savings Bank. This letter Mrs. Clark gave to Mrs. Platt and told her to keep it, as it might be of value to her. To the admission of this letter the appellant objected as irrelevant and incompetent. The court overruled the objection, and the appellant duly excepted.

Each of the three nieces has drawn $500 on her book.

Upon the hearing at the trial the appellee claimed that, upon the question of the title to the deposits in the three bank books, the decree in the case of *Miller* v. *Clark and others*, hereinafter referred to, was, if admissible in evidence, conclusive, and would estop the appellant from offering evidence upon the point in question, and requested the court to allow him to open the case and offer the judgment; but the court declined to permit it, and the appellant offered evidence in regard to the title of the bank deposits, and both parties were fully heard in reference thereto; and upon the evidence so received the above finding in relation to the ownership of the deposits is made.

The appellant claimed that the facts showed a gift of a testamentary nature to take effect at the death of Mrs. Clark, and that her control over the deposits and retention of the books during her life rendered it such a testamentary gift, and therefore void because not in testamentary form ; but the court overruled this claim, and affirmed the judgment of the court below.

On the 3d of January, 1887, Martha A. Miller, of Iowa, a daughter of the appellant, and one of the residuary legatees with her of the personal property under the will, brought a bill in equity in the United States Circuit Court for the District of Connecticut against the said Emma Clark, Mary Bell Clark, Ellen C. Platt, and the executor, the present appellee, asking that they be compelled to turn over to the executor said bank books, and that the executor be ordered to receive said books and the money deposited in the Connecticut Savings Bank, and to include said sum and accrued interest as assets of the estate of Mrs. Clark, and amend his inventory so as to include the same. The executor offered in evidence a certified copy of the record in the case, including the opinion of Judge SHIPMAN, and the printed proofs taken before an examiner, on which the decree was based, supported by oral testimony that these printed proofs were those so taken and the only proofs used at the hearing. The printed proofs were not certified, but certification was waived by the appellant, and it was admitted that the proofs were correctly printed as taken.*

* NOTE. The opinion of Judge SHIPMAN in the case of *Miller* v. *Clark*, here referred to, is as follows:—

SHIPMAN, J. This is a bill in equity by one of the residuary legatees under the will of Irene Clark, deceased, to compel three of the defendants to deliver to the executor of said will three savings bank books alleged to be in their possession, and to compel the executor to receive the books, to inventory the deposits named therein as a part of the assets of the estate, and to collect the amount due thereon for the benefit of the estate.

Mrs. Irene Clark, of Milford, Connecticut, died in April, 1887, leaving a last will, which was executed in November, 1884, by which, after a specific legacy to her husband, she gave all the rest of her personal estate to six nieces, Irene M. and Martha A. Buckingham, Emma J. and Mary Bell Clark, Ellen C. Platt and Rosalie Merwin, to be equally divided between

Buckingham's Appeal from Probate.

The appellant excepted to the whole evidence as irrele-
vant, and *res inter alios acta*, and also to the copies as not

---

said persons, and appointed Albertus N. Clark, the husband of said Emma
J., her executor. At the time of her death she was from seventy-six to
seventy-eight years old, without children, the second wife of Bela Clark,
to whom she was married late in life. Her living relatives were a sister
and a brother, and divers nephews and grand-nephews, nieces and grand-
nieces. Her personal property, besides a small amount of household goods
and wearing apparel, amounted to $7,509.83, mostly consisting of deposits
in savings banks.

On October 15th, 1884, she had $5,871 on deposit in the Connecticut Sav-
ings Bank of New Haven. In pursuance of a previously expressed inten-
tion she went to the bank on that day, accompanied by Mrs. Nellie C. Platt,
gave the teller her bank book to be written up, and directed that $1,500
should be transferred from her account to each one of the three defend-
ants, Nellie C. Platt, Emma M. Clark and Mary Bell Clark. This was done
and three new accounts were opened in the names of said three persons,
whereby each was credited with $1,500, and Mrs. Irene Clark's account was
correspondingly reduced $4,500. Three new pass books were made out in
the names of the three new depositors, and were given to Mrs. Irene Clark.
She told the teller that she wanted to have the bank books so fixed, or the
entries so made, that the money should belong to the persons named, but
so fixed that they could not draw it and spend it during her life. The tel-
ler thereupon entered upon the pass books the words—"Only Mrs. Irene
Clark has power to draw." The ledger accounts were in the names of said
three persons.

The bank has a "signature-book," so called, in which are entered the
signatures of each depositor, and, when trust accounts are opened, the sig-
natures of the trustee and of the *cestui que trust*. Other facts in regard
to the depositor or the *cestui que trust* are also entered in this book for the
purpose of identification. Mrs. Irene Clark on this day wrote her name in
the signature book, to which the teller added, in writing, the word "Trus-
tee," but it did not clearly appear when the word was written. Mrs. Platt
wrote her name in the book opposite the number of her pass book, and the
two signatures were included in a bracket. The words "Mrs. Clark only
to draw" were also written in the margin by the teller. Blank slips for the
two other donees to sign, and upon which to state the required facts, were
given to Mrs. Clark. Upon her return to Milford, on that day, she showed
the husband of Mrs. Platt the three bank books, said that she had given
the girls $1,500 each, showed the two slips, and instructed him to have the
two other nieces informed that they must be signed and returned to the
bank. These slips she kept. In a few days the said two nieces were in-
formed that their aunt had given to each a bank book of $1,500, and that
she wanted them to come to her house and get some slips to sign and return
to the bank. The slips were obtained, signed and returned to the bank, and
the portions containing the signature of the *cestui que trust* were pasted
in the signature book opposite the respective numbers of the books. The

showing on what proof the decree was based, and as show-
ing that the executor disclaimed any title and interest in the

other facts were entered by the teller and some other clerk. After the sig-
natures were pasted in the book, but how long after did not appear, the tel-
ler also wrote the words "Mrs. Irene Clark, Trustee" below each signature,
and the words "Mrs. Clark only to draw" in the margin. The bank books
were retained by Mrs. Irene Clark until a short time before her death, when
all the seven bank books in which she was interested were intrusted by her
to Mrs. Platt, for some purpose not known, and were, at the request of Mrs.
Clark, returned to her three or four days before her death. This request to
return was manifestly to satisfy and quiet her husband. Nothing has ever
been drawn upon the three books in controversy either as principal or in-
terest.

Other testimony in regard to the executed purpose of Mrs. Irene Clark
to give the three deposits of $1,500 each to said three persons, as declared
by her after her return from New Haven and before the acceptance of the
gifts by the absent nieces, and also about the time of and either before or
soon after said acceptance, was given. Her executed and completed inten-
tion to give said deposits to the three donees, the actual gift, its consumma-
tion by an acceptance on their part, and her express declaration of trusteeship
during her life of the said moneys for the benefit of the named persons, were
clearly proved. Her purpose to give the several sums so that the funds should
belong to said parties, and to create a trusteeship thereof in herself during
her life, was plainly declared at the bank, and was honestly, and, so far as
appears, at the request of Mrs. Irene Clark only, attempted to be carried
out by the teller in accordance with her wishes, by the entries which he
made upon the books of the bank and the pass books.

The facts bring the case within any rule which has been laid down in re-
gard to the validity of gifts *inter vivos*. The courts of last resort in Mas-
sachusetts and in New York differ from each other in regard to the absolute
necessity of an acceptance of the gift of the donee, (*Gerrish* v. *New Bed-
ford Inst. for Savings*, 128 Mass., 159; *Martin* v. *Funk*, 75 N. York, 134);
but there can be no doubt that the donees in this case knew of and accept-
ed the gifts. The authorities unitedly declare that the gift may be made
by delivery to the donee, or by the creation of a trust in a third person or
in the donor, and that where there is an express declaration of trust in the
donor the rule which requires cessation of control and dominion by the
donor over the personal property which is given is not applicable. *Milroy*
v. *Lord*, 4 De G., F. & J., 264; *Young* v. *Young*, 80 N. York, 422; *Scott* v.
*Berkshire Co. Sav. Bank*, 140 Mass., 157; *Minor* v. *Rogers*, 40 Conn., 512;
*Boone* v. *Citizens' Savings Bank*, 84 N. York, 83.

Testimony in regard to the declarations and acts of the donor which were
made or which took place before or about the time of the acceptance of the
gifts, and which declared her purpose in transferring the deposits to the
donees, was objected to. This species of testimony is wont to be admitted
in this class of cases for the purpose of showing the intention of Mrs. Clark
in making the transfer and holding the books, and of showing the charac-

bank books, and did not claim to represent the appellant in the matter ; and objected also to so much of them as contained Judge SHIPMAN's opinion, as being no part of the record and mere hearsay, and irrelevant and incompetent to explain the grounds of the decree. The court overruled all these objections and admitted the evidence, and held that the opinion of Judge SHIPMAN might be read to show the grounds of the decree.

Said action was brought at the request of the appellant and for her benefit, and the appellant's attorneys, Mr. McMahon and Mr. Buckingham, appeared and had the exclusive charge of the case during the preparation and trial thereof, except that the bill in the case was originally drafted by Mrs. Miller's counsel in Iowa. This bill was sent to the appellant's attorney, Mr. McMahon, who made such changes in it as he deemed best, and had the action commenced. Mr. Baldwin, the appellant's attorney in this appeal from probate, was not concerned in the Miller case. Mr. McMahon advised with the appellant touching the case.

The executor's charges consisted of time and money spent, principally in attending to lawsuits which were brought against the estate. A small part only accrued upon the Miller case. The appellant was a very active promoter of this litigation, and either directly or indirectly

---

ter of said acts. *Scott v. Berkshire Savings Bank, supra.* These statements being also against the interest of Mrs. Clark, and tending to prove the fact of the gift, are admissible. By the statute of Connecticut, in actions by or against the representative of a deceased person, the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. No testimony was given by any of the parties to the suit in regard to the acts or declarations of the donor.

The complainant makes the point that in case these transfers were gifts they were in partial ademption or satisfaction of the residuary bequests under the will. Without stopping to consider the question whether the principle of the ademption of a general or specific legacy is applicable to the case of these residuary legatees, it is sufficient to say that the testimony proves the existence of an intent on the part of the testatrix that the gifts were to have no reference to the testamentary disposition of her property.

Let the bill be dismissed.

was responsible for the existence of most of it. The charges of the executor were reasonable and fair charges.

At the hearing before the probate court the executor appeared with vouchers for each item of his account, and offered to show them to the appellant and her attorney; but the appellant waived the production, and made no objection to the account, except by filing certain written objections. All the items of the account were true and just charges against the estate, and all, except the executor's charges for services, were admitted to be correct and just. The appellant claimed, and asked the court to hold, that the form of the account was not proper, in that it was in gross, without proper explanation of its nature; but the court overruled the objection.

The court affirmed the decree of the probate court, and the appellant appealed to this court.

*J. M. Buckingham*, of New York, for the appellant.

1. The gift of the $1,500 to each of the three nieces was not valid. It was not a gift *inter vivos*, because the donor was to retain the gift during her life and the donees were not to receive it until after her death. And for the same reason it cannot be claimed to be a *donatio causâ mortis*. *Basket* v. *Hassell*, 107 U. S. R., 602. Mrs. Clark had already made her will and given to legatees this very money, the three nieces sharing equally with the others. The attempt to secure the money by them as a gift is an attempt *pro tanto* to revoke the will by verbal declarations of the testatrix sustained by the testimony of the parties interested. *Hough* v. *Bailey*, 32 Conn., 288; *Bartlett* v. *Remington*, 59 N. Hamp., 364; *Sherman* v. *New Bedford Sav. Bank*, 138 Mass., 581. It is established law that a gift to take effect upon or after the death of the donee is in the nature of a testamentary disposition of property, and can only be made effectual by a will duly executed. "Where the intent of the donor in declaring a gift or trust is shown to be to retain control of the fund during his life, the property to pass from his control to that of the donee only at his death, it is in the nature of a

testamentary disposition of property, and will not be sustained unless the formalities of the wills acts are conformed to. For example, *A* made a deposit in trust, notifying the donees, and telling them that he would control the money while he lived but at his death it would be theirs. This was not a completed gift." 2 Morse on Banking, § 613, citing *Nutt* v. *Morse*, 142 Mass., 1. See also *Hoar* v. *Hoar*, 5 Redf., 637; *Sheegog* v. *Perkins*, 4 Baxt., 273; *Zimmerman* v. *Streeper*, 75 Penn. St., 147; *Baltimore Retort Co.* v. *Mali*, 65 Maryl., 93; *Harris* v. *Clark*, 1 N. York, 93; *Curry* v. *Powers*, 70 id., 212; *Young* v. *Young*, 80 id., 422; *Jackson* v. *Twenty-Third St. R. R. Co.*, 88 id., 520; *Sherman* v. *New Bedford Sav. Bank*, 138 Mass., 581; *Raymond* v. *Selleck*, 10 Conn., 480; *Burton* v. *Bridgeport Sav. Bank*, 52 id., 398; 2 Schouler on Pers. Prop., 139.

2. The gift cannot be sustained by supposing a trust for the nieces on the part of Mrs. Clark, for no trust was ever intended or declared. There is no finding or pretense that the word "trustee" was written on the signature book by Mrs. Clark or by any one else with her knowledge. It is only found that the teller of his own accord afterward added it to her name. And in all the alleged declarations of Mrs. Clark in connection with this transaction to the teller or to other persons the word "trustee" was not used or any idea of a trust heard of until afterwards. It is an absurdity after hearing Mrs. Clark declare that she wanted her bank book written up, and $1,500 to be transferred from her account to each of the three nieces named, and that she wanted the bank books so fixed and the entries so made that the money should belong to the three nieces, but so fixed that they could not draw it and spend it during her life, and the teller made out the books, and entered on each, at the head of the account, " only Mrs. Irene Clark has power to draw," that afterwards he could, by adding to her signature on the signature book the word " trustee," change or alter this declared gift to take effect in the future, into a trust. The case of *Young* v. *Young*, 80 N. York, 422, is precisely in point. See also Lewin on Trusts, ch. 6, § 3; *Curry* v. *Powers*, 70

N. York, 212; *Bradbrook* v. *Boston Five Cent Sav. Bank*, 104 Mass., 228; *Sherman* v. *New Bedford Sav. Bank*, 138 id., 581; *Nutt* v. *Morse*, 142 id., 1; *Hill* v. *Stevenson*, 63 Maine, 364; *Robinson* v. *Ring*, 72 id., 140; *Tillinghast* v. *Wheaton*, 8 R. Isl., 536; *Case* v. *Dennison*, 9 id., 88; *Antrobus* v. *Smith*, 12 Ves., 39; *Bridge* v. *Bridge*, 16 Beav., 315.

3. The record in the case of *Miller* v. *Clark* was improperly admitted. It is enough that it was not pleaded. But the present appellant was no party to it. The fact that she promoted the suit would not be sufficient to make her concluded by the judgment. A judgment can conclude only the parties and their privies. While persons may in some cases be held concluded who were not strictly parties on the record, yet they must have a direct interest in the subject matter, with a right to intervene, and to make defense or control the proceeding. *Bates* v. *Stanton*, 1 Duer., 79. Also a right to call and cross-examine witnesses and to appeal. 1 Greenl. on Ev., § 535. The appellant does not come within any of these conditions. Besides this, the judgment here was merely one of dismissal and concludes no one. *Fisk* v. *Parker*, 14 Louis. Ann., 491; Freeman on Judgments, § 261. But if the record was admissible, yet the opinion of Judge SHIPMAN was not so. That was no part of the record, and was not legal evidence of the facts which it stated.

*W. L. Bennett* and *W. B. Stoddard*, with whom was *S. C. Loomis*, for the appellee.

1. It must be perfectly clear that Mrs. Irene Clark intended to make, and did make, a valid, completed gift of this money to her nieces, and that the nieces accepted the gift. She intended to act as trustee for them for the purpose of preventing it from being spent so long as she lived. The material fact as to this part of the case is absolutely found by the court as follows: "Mrs. Clark, at the time she made the transfers at the bank from her own name to the names of the nieces, intended to give to each of them the sum deposited in her name, and intended to retain custody and control over the bank book and deposit only as trustee

for them.  The court finds that the donees accepted the gift of the sums of money so deposited."  This is an end of that matter.  *Ward* v. *Ward*, 59 Conn., 188, and cases cited.  The fact that the pass books remained in Mrs. Clark's possession most of the time during her life, does not affect the gift.  She was the trustee, and, as such, was entitled to the possession of the books.  There is no intimation that she held the books because she owned the money.  Her entire action in the matter shows that she held them as trustee, which was proper.  It is so expressly found by the court. This case has been decided upon the same state of facts by the United States Circuit Court.  *Miller* v. *Clark*, 40 Fed. Rep., 15.  See also *Camp's Appeal from Probate*, 36 Conn., 88; *Minor* v. *Rogers*, 40 id., 512; *Kerrigan* v. *Rantigan*, 43 id., 17; *Burton* v. *Bridgeport Sav. Bank*, 52 id., 398; *Gerrish* v. *New Bedford Inst. for Savings*, 128 Mass., 159; *Martin* v. *Funk*, 75 N. York, 134; *Boone* v. *Citizens' Sav. Bank*, 84 id., 83; *Howard* v. *Windham Co. Sav. Bank*, 40 Verm., 597; *Ray* v. *Simmons*, 11 R. Isl., 266.

2.  The objection that the executor's account is in gross, without specifications of items, is not well taken.  There were schedules annexed which stated the items in detail. The account meets the requirements of the decision in *Fairman's Appeal from Probate*, 30 Conn., 208.  See also *Atwater* v. *Barnes*, 21 Conn., 237; *Hutchinson's Appeal from Probate*, 34 id., 300.

3.  The record in the case of *Miller* v. *Clark* was properly admitted.  When any person procures a suit to be brought in the name of another for his own benefit, and employs counsel in the prosecution of that suit, the judgment in it is admissible and conclusive against him.  *Stoddard* v. *Thompson*, 31 Iowa, 80; *Conger* v. *Chilcote*, 42 id., 18; *Marsh* v. *Smith*, 73 id., 295; *Palmer* v. *Hayes*, 112 Ind., 289; *Castle* v. *Noyes*, 14 N. York, 331; *Spencer* v. *Dearth*, 43 Verm., 98; *Hunt* v. *Haven*, 52 N. Hamp., 162; *Peterson* v. *Lothrop*, 34 Penn. St., 223; *Cecil* v. *Cecil*, 19 Maryl., 72; *Lovejoy* v. *Murray*, 3 Wall., 1, 18; *Cromwell* v. *County of Sac*, 94 U. S. R., 351, 360.  The case was brought at the request of this

appellant and for her benefit, and her attorneys appeared and had exclusive charge of the case, except to draft the original bill. The record and finding of facts by Judge SHIPMAN was admissible under the practice of this state. *Munson* v. *Munson*, 30 Conn., 425; *Huntley* v. *Holt*, 59 id., 102.

TORRANCE, J. In the case at bar the present appellant, Irene M. Buckingham, took an appeal to the Superior Court from a decree of the court of probate for the district of Milford accepting and approving the final administration account of the executor upon the estate of one Irene Clark, deceased. The appellant was one of the residuary legatees of the personal property under the will. The reasons assigned for taking the appeal were three in number, namely :—

*First.* Because the executor had not charged himself with all the assets and property belonging to the estate that came into his hands.

*Second.* Because the court allowed the executor's account " in gross and without proper itemizing and explanation."

*Third.* Because the court allowed amounts for personal services and expenses to the executor, which were alleged to be "excessive, unnecessary, unjust and illegal."

Upon the trial in the Superior Court the principal point in dispute between the parties related to the matter referred to in the first assigned reason of appeal. The decision of this point turned upon the question whether Mrs. Irene Clark, in her lifetime, had or had not made to three of her nieces a valid gift of certain moneys in bank, amounting in the whole to forty-five hundred dollars. If such gifts were valid, then the money in question did not belong to the estate, and ought not to have been inventoried as part thereof. If they were not valid gifts, then, of course, the money formed a part of the estate and should have been so returned.

The Superior Court found all the facts and circumstances under which the claimed gifts of fifteen hundred dollars to each of three nieces were made ; that in what Mrs. Clark so did with reference to the making of the gifts, she intended

to make a valid gift of that sum to each of the nieces, to take effect at that time; and that the nieces then accepted the gifts.

The facts and circumstances aforesaid are particularly found and stated upon the record, but for the purposes of this decision it is unnecessary to state them at greater length here.

We are satisfied that the conclusion of the court below, upon the facts as found, that these gifts of money to the nieces were valid gifts, was right, whether regarded as a conclusion of fact or as one of law. But in the trial of the case we think the court erred in admitting certain evidence against the objection of the appellant. We do not here refer to the admission of the letter written by the appellant to the deceased, for we think that was, under the circumstances, properly admitted, and indeed this point was not pressed before us on the argument. We refer to the admission of the opinion of the judge in the case from the Circuit Court of the United States for the district of Connecticut, to which reference is hereinafter made.

It appears from the record in the case at bar, that in 1887, one Martha A. Miller of Iowa, a daughter of the appellant, and one of the residuary legatees of the personal property under the will of Mrs. Clark, brought a bill in equity, in the above named court, against the executor of Mrs. Clark's will and the three nieces to whom the gifts were made by Mrs. Clark in her lifetime, asking that the nieces be compelled to turn over to the executor the money so given, and the bank books which had been taken therefor in the names of the nieces, and that the executor be ordered to receive and account for the money as such executor. The court upon the facts dismissed the bill. Upon the trial of this present case in the court below, the executor of Mrs. Clark, who is the sole appellee in the case at bar, offered in evidence a certified copy of the record of the case aforesaid, in the United States Circuit Court, together with a like copy of the opinion filed in the cause by the judge who tried it, and the printed proofs taken before an examiner in the

cause.   The appellant objected to the whole of this evidence, as among other things "irrelevant and *res inter alios acta*," and also to the copies, " as not showing on what proof the decree was based."   She also objected to the opinion of the judge " as being no part of the record and mere hearsay, and irrelevant and incompetent to explain the grounds of the decree."   The court overruled each and all of these objections, admitted the evidence, and held that the opinion of the judge might be read and used to show the grounds of the decree.

If the present appellant was a party or privy to the suit in the United States Court, then of course the legal record in that suit would have been admissible against her upon any matter which had been there litigated and determined between herself and the present appellee.

She was clearly not a party of record in that suit, but the appellee claims that she was, within the meaning of the law, an actual party thereto, and in privity with himself, as executor of the estate which he, in that suit, represented.   In regard to the actual connection of the present appellant with the suit in the United States Court, the record is as follows :—" The said Martha Miller is one of the devisees under said will, (that is, of Mrs. Clark), and the daughter of the appellant, and said. action was brought at the request of the appellant and for her benefit, and the appellant's attorneys, Mr. McMahon and Mr. Buckingham, appeared and had the exclusive charge of said case during the preparation and trial thereof, except that the bill in the case was originally drafted by Mrs. Miller's counsel in Iowa.   This bill was sent to the appellant's attorney, Mr. McMahon, who made such changes in it as he deemed best, and had the action commenced.   Mr. Baldwin, the appellant's attorney in this appeal from probate, was not concerned in the Miller case.   Mr. McMahon advised with the appellant touching this Miller case."

It thus appears from the record that the present appellant, for her own benefit as a legatee under the will of Mrs. Clark, caused a suit to be brought in the United States

Court in the name of her daughter, another legatee under the will, against the executor of Mrs. Clark's estate and those to whom the gifts aforesaid had been made, to determine whether the money claimed under the gifts was or was not the money of the estate, for which the executor should account. This suit was commenced by her attorneys, it was prosecuted by them to a final conclusion, and they had the exclusive charge of it during the preparation and trial thereof, with the exception of the original draft of the bill. To that suit the estate of Mrs. Clark, through the executor thereof, was a party. So far as legatees and distributees of the personal property were concerned, the executor represented them and their interest in the estate in this proceeding.

"The rule of law is well established that the legal title to all personal property of the deceased vests in his legal representatives. They can dispose of it at pleasure, being responsible for the faithful execution of the trust." *Beecher* v. *Buckingham*, 18 Conn., 110 ; *Johnson* v. *Connecticut Bank*, 21 id., 156. The personal representative holds such property as a trustee of all parties interested therein. Schouler on Exrs. & Admrs., § 239.

Assuming that the United States Court had jurisdiction of the parties and the subject matter, we think, if the decree in that suit had determined that the gifts in question were invalid, and that the money so given belonged to the estate, such a decree would have been admissible in evidence in the present case in favor of the appellant and against the appellee. If this be so, we see no good reason why it is not admissible in evidence against the appellant and in favor of the estate upon this same point, more especially in view of the fact that the appellant was the party who actually brought and conducted the suit.

The following authorities support this conclusion. *Crandall* v. *Gallup*, 12 Conn., 365 ; *Gould* v. *Stanton*, 16 id., 21 ; *Teague* v. *Corbitt*, 57 Ala., 529 ; *Scott* v. *Ware*, 64 id., 174 ; *Stone* v. *Wood*, 16 Ill., 177 ; *Castellaw* v. *Guilmartin*, 54 Geo., 299 ; *Steele* v. *Lineberger*, 59 Penn. St., 308.

Whether, when so admitted, such decree would be conclusive or not, we have no occasion at present to determine.

In admitting the record itself therefore, under the circumstances disclosed by the finding, we do not think the court below erred. But the court also admitted in evidence the written opinion of the judge who tried the case in the United States Court. This was no part of the record. It was admitted for the purpose of showing the grounds of the decree. The decree itself did not show on what facts it was based.

After the record was admitted, the question then was whether the validity of the gifts to the nieces, which was in issue in the case at bar, had been in issue and had been determined in the prior suit. In such a case, if the record does not clearly disclose the facts upon which the judgment or decree is based, they may be shown by any proper evidence outside of the record. *Supples* v. *Cannon*, 44 Conn., 424; *Mosman* v. *Sanford*, 52 Conn., 23. But the witnesses who give such evidence must give it in the ordinary way, and under the conditions imposed upon all witnesses. It must be given under oath and subject to the right of cross-examination, and it must not be what is termed "hearsay" evidence.

By the admission of the opinion aforesaid, as evidence to show the grounds of the decree, these fundamental rules of evidence were violated, and the court committed an error. But the appellee claims that, if the court did so err, the decision at which the court arrived upon the merits of the case, was not affected by the admission of the aforesaid testimony. This may be true, but we cannot be certain of it. The conclusions of the court below were drawn after the reception of the entire testimony, and we cannot profitably speculate as to the degree of influence which the objectionable testimony had in the final result. In such a case, unless it clearly appears that no harm could have been done, perhaps the safer rule is to grant a new trial. *Jacques* v. *Bridgeport Horse R. R. Co.*, 41 Conn., 66; *Richmond* v. *Stahle*, 48 id., 22.

We regret the necessity that compels us to grant a new trial in a case like the one at bar, where the real questions at issue have been so fully tried before two able and impartial judges, but we see no way of avoiding such a result in the present case.

For the reasons herein given the judgment of the court below is reversed and a new trial is granted.

In this opinion the other judges concurred.